THERRIAULT, RESPONDENT, *v.* ENGLAND ET AL., APPELLANTS.

(No. 2,984.)

(Submitted May 13, 1911. Decided May 27, 1911.)

[116 Pac. 581.]

*Personal Injuries—Master and Servant—Negligence—Proximate Cause—Minors—Duty to Warn—Contributory Negligence.*

Personal Injuries—Negligence—Proximate Cause—What Constitutes.
1. To enable plaintiff in a personal injury action to recover damages, he must show that the negligence charged was a proximate cause of the injury, *i. e.,* a cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produced the injury, and without which it would not have occurred.

Same—Proximate Cause—What Does not Constitute.
2. A cause which, in intervening between defendant's negligence and plaintiff's injury, will break the chain of sequence of the former's wrongful act and relieve him from liability therefor, is one which could not have been foreseen or anticipated by him as a probable consequence of his negligence.

Same—Negligence—Proximate Cause—Evidence.
3. Plaintiff, a minor, was employed by defendant members of a gun club to load the automatic traps used to propel clay pigeons. His place of employment was in a newly constructed traphouse, the back of which, composed of rough boards closely fitted together, faced the shooters. Between the date of its construction and the accident a

crack about one-eighth of an inch wide appeared between two boards forming the back, of the existence of which defendants, however, knew nothing. Plaintiff relinquished his post of duty at the traps to a boy friend and proceeded to look at the shooters through the crack; while doing so, scattering shot struck him in the face, causing the injuries complained of. *Held*, that defendants' negligence was not the, or a, proximate cause of plaintiff's injury, but that plaintiff's own act intervened to make possible the resulting injury.

Same—Contributory Negligence.

4. Plaintiff not having been engaged in the discharge of his duties at the time of his injuries, but having voluntarily placed himself in a known situation of danger to satisfy his curiosity, was not in any position to recover compensation from his employers.

Same—Minors—Contributory Negligence—Infancy.

5. Plaintiff having negligently exposed himself to a danger which he fully understood and appreciated, the fact that he was a minor and "did not think about" the danger at the time the accident happened did not excuse him from the consequences of his negligent act.

Same—Minors—Duty of Master to Warn.

6. Where a minor servant has knowledge of all the facts concerning his employment and appreciates the dangers surrounding it, forming a correct judgment upon them, his master is not under any obligation to warn him with respect to them.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Alban Therriault, through Severin Therriault, his guardian *ad litem*, against Orville England and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

*Mr. H. H. Parsons,* and *Messrs. Hall & Patterson,* submitted a brief in behalf of Appellants. *Messrs. Parsons* and *Patterson* argued the cause orally.

There is a variance between plaintiff's complaint and the evidence, amounting to a failure of proof. He can recover only on the facts alleged. (*Flaherty* v. *Butte Elec. Ry.,* 40 Mont. 454, 135 Am. St. Rep. 630, 107 Pac. 416; *Thurman* v. *Pittsburg & Mont. Co.,* 41 Mont. 141, 108 Pac. 588; *Forsell* v. *Pittsburg etc. Co.,* 38 Mont. 403, 100 Pac. 218; *Bracey* v. *Northwestern I. Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706.) If he sought to recover for an injury received out of the line of his employment, he must so allege in his complaint. (*County* v. *Wright,* 16 Ind. App. 630, 45 N. E. 817.) On the contrary, where he seeks to recover for an injury received in the line of his employ-

ment, he must state facts showing that also. He must allege and show that he was acting within the scope of his employment. (*Stagg* v. *Spice·Co.*, 169 Mo. 489, 69 S. W. 391; *Branham* v. *Cotton Mill*, 61 S. C. 491, 39 S. E. 708; *S. B. Plow Co.* v. *Cissne*, 35 Ind. App. 373, 74 N. E. 282; *Railway* v. *Lightheiser,* 163 Ind. 247, 71 N. E. 218, 660; *Mackey* v. *Mill Co.*, 210 Ill. 115, 71 N. E. 448; *Adams* v. *Railway,* 166 Ala. 449, 51 South. 987; *Railway* v. *Perkins,* 171 Ind. 307, 86 N. E. 405.)

Plaintiff was guilty of the grossest contributory negligence. If he was not so guilty, we admit our inability to conceive a case of contributory negligence. The danger of sticking a red-hot poker in his eye and the resultant injury was, and is, no more palpable, plain and obvious than looking into the bore of a shotgun when it is turned toward the crack through which he was deliberately and steadfastly gazing. ·The comment of the court in the case of *Bulkley* v. *Manufacturing Co.*, 113 N. Y. 540, 21 N. E. 717, is pertinent here. (See, also, *Levey* v. *Bigelow,* 6 Ind. App. 677, 34 N. E. 128; *Forquer* v. *Slater Brick Co.*, 37 Mont. 447, 97 Pac. 843.)

Plaintiff knew and comprehended every danger and risk that an adult could have known and appreciated. This being so, he is chargeable with contributory negligence, just as much as an adult would have been. "If he had the knowledge of the situation and the intelligence to appreciate the dangers thereof, his minority cannot shield him from the consequences of his negligent acts." (*Railway* v. *Rogers,* 89 Tex. 675, 36 S. W. 243; *Railway* v. *Phillips,* 91 Tex. 278, 42 S. W. 852; *Freeman* v. *Garcia* (Tex. Civ. App.), 121 S. W. 886; *Krisch* v. *Richter* (Tex. Civ. App.), 130 S. W. 186; *Helmke* v. *Thilmany,* 107 Wis. 216, 83 N. W. 360; *Sanborn* v. *Railway Co.*, 35 Kan. 292, 10 Pac. 860; *Wight* v. *Railway Co.*, 161 Mich. 216, 126 N. W. 414; *Cudahy Co.* v. *Marcan,* 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258.)

Where one is injured by reason of his placing himself in a position of danger, not naturally incident to the performance of his duties, or where he goes outside the scope of his employment and is injured, he cannot recover. He is chargeable with

contributory negligence as a matter of law. (*Morewood Co.* v. *Smith,* 25 Ind. App. 264, 57 N. E. 199; *Lynch* v. *City,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A., n. s., 261; *Worthington* v. *Goforth,* 124 Ala. 656, 26 South. 531; *Grunert* v. *Spalding,* 104 Wis. 193, 80 N. W. 589; *Spencer* v. *Tile Co.,* 107 Minn. 403, 120 N. W. 370, 687; *Lumber Co.* v. *Brandvold,* 141 Fed. 919, 73 C. C. A. 153; *Fritz* v. *Gas Co.,* 18 Utah, 493, 56 Pac. 90.)

The adjudicated cases are to the effect that in a case like the one at bar, where the risk and the danger are both palpable and plain, as well as comprehended and understood, the risk is assumed. (*Kuphal* v. *Western Montana Flouring Co.,* 43 Mont. 18, 114 Pac. 122.)

When the risk and the hazard are once appreciated by a minor, his thoughtlessness or inattention neither excuse nor avail him. (*Morewood Co.* v. *Smith,* 25 Ind. App. 264, 57 N. E. 199; *Coonce* v. *National Bis. Co.,* 115 Mo. App. 629, 92 S. W. 352; *Betz* v. *Winter,* 195 Pa. 346, 45 Atl. 1068; *Walker* v. *Scott,* 67 Kan. 814, 64 Pac. 615; *Coal Co.* v. *Barringer,* 218 Ill. 327, 75 N. E. 900.)

*Mr. John H. Tolan,* for Respondent, submitted a brief and argued the cause orally.

The question of variance, not having been presented to the court below, may not now be considered upon this appeal. (*Robinson* v. *Helena Light & Ry. Co.,* 38 Mont. 222, 99 Pac. 838; *Nord* v. *Boston B. M. C. C. S. Co.,* 30 Mont. 48, 73 Pac. 681; *Dawes* v. *Great Falls,* 31 Mont. 9, 77 Pac. 309.) However, there was no variance. The cause of action is proven substantially as alleged. (*Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 72; *Vreeland* v. *Edens,* 35 Mont. 413, 89 Pac. 735; *Robinson* v. *Helena Light & Ry. Co., supra.*) The gist of the action is the negligent construction, maintenance and condition of the traphouse, the failure to inspect and repair, allowing plaintiff to be employed therein without repairing, inspecting or warning him. This cause of action is not changed by the testimony introduced. That there is no merit in the contention, see *Vindicator Con. G. M. Co.* v. *First Brook,* 36 Colo. 498, 86 Pac. 313, 10 Am. & Eng.

Ann. Cas. 1108; *Jones & Adams Co.* v. *George,* 227 Ill. 64, 81 N. E. 4, 10 Am. & Eng. Ann. Cas. 285.

Appellants contend that when plaintiff left his seat back of the trap he went beyond the scope of his employment; also, that by leaving the place back of the trap, he ceased to be in the employ of defendants. The decisions do not uphold the contentions of counsel. (*Moyse* v. *Northern Pac. Ry. Co.,* 41 Mont. 272, 108 Pac. 1062; *Hollingsworth* v. *Davis-Daly Estates etc. Co.,* 38 Mont. 143, 99 Pac. 142; *Parkinson* v. *Riley,* 50 Kan. 401, 34 Am. St. Rep. 123, 31 Pac. 1090; *Broderick* v. *Detroit R. S. & D. Co.,* 56 Mich. 261, 56 Am. Rep. 382, 22 N. W. 802; *Taylor* v. *Bush & Sons Co.,* 6 Penne. (Del.) 306, 66 Atl. 884, 12 L. R. A., n. s., 853; *International G. & R. Co.* v. *Ryan,* 82 Tex. 565, 18 S. W. 219; *Dischon* v. *Cincinnati etc. Ry. Co.,* 126 Fed. 194; s. c. 133 Fed. 471, 66 C. C. A. 435; *Ellsworth* v. *Metheney,* 104 Fed. 119, 44 C. C. A. 484, 51 L. R. A. 389.)

The questions of assumption of risk, appreciation of risk and contributory negligence were questions for the jury. (*Oster-holm* v. *Boston & Montana C. & M. Co.,* 40 Mont. 508, 107 Pac. 499.) To hold that the plaintiff was precluded from recovery because of assumption of risk, it was necessary that the testimony should disclose, not only that he knew all physical conditions surrounding him, but that he knew and appreciated the danger therefrom. (*Longpre* v. *Big Blackfoot Milling Co.,* 38 Mont. 99, 99 Pac. 131; *Anderson* v. *Northern Pac. Ry. Co.,* 34 Mont. 182, 85 Pac. 884; *Stevens* v. *Elliott,* 36 Mont. 92, 92 Pac. 45; *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843; *Hardesty* v. *Largey Lumber Co.,* 34 Mont. 151, 86 Pac. 29; *Lahti* v. *Rothschild et al.* (Wash.), 111 Pac. 451.)

Upon the question whether or not a nonsuit should have been granted, we submit the following: "Upon a motion for a nonsuit, those facts will be deemed proved which the evidence tends to prove." (*Roach* v. *Rutter,* 40 Mont. 167, 105 Pac. 555; *Anderson* v. *Northern Pac. Ry. Co., supra.*) If, upon this question, different men of fair, sound minds draw different conclusions, then the question must be submitted to the jury.

(*O'Brien* v. *Corra Rock Island M. Co.*, 40 Mont. 212, 105 Pac. 724.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In March, 1909, the defendants in this action and certain other individuals composed the Missoula Gun Club, a voluntary association formed for the purpose of practicing shooting at inanimate targets. The associated members were in possession of certain grounds, traphouses, warehouses, and other paraphernalia where their practice was carried on. Three or four days prior to the accident, a new traphouse had been constructed, and in it installed an automatic trap for throwing the clay targets. The trap itself was set in the ground about two feet, and was operated by a loader who sat behind it, placed the target in position, and then fixed the angle at which it should be discharged by working the trap with his feet. The trap was actually sprung and again placed in position to be loaded by a man who stood on the outside of the traphouse behind the shooters, and worked a lever connected with a rod which in turn connected with the trap. The shooters stood about sixteen yards from the traphouse, and shot directly over it, or to one side or the other, according as the target was discharged directly from the trap or at an angle. On March 21, 1909, these defendants were at these grounds, practicing. They employed the plaintiff to load and work the trap, and this work required him to be in the traphouse. During the course of the day a Mrs. Stephens, a guest of the members, undertook to shoot. The gun which she held was prematurely discharged. Some shot passed through a crack in the back of the traphouse, and penetrated the face of plaintiff, causing injuries. This action was commenced by the plaintiff, through his guardian, to recover damages on the ground of negligence. The defendants answered, denying any negligence, and pleading affirmatively contributory negligence and assumption of risk. The trial resulted in a verdict and judgment in favor of plaintiff, and from that judgment and an order denying them a new trial defendants have appealed.

The position taken by the appellants and our own conclusion upon the entire case have led us to assume some of the facts stated which might otherwise be considered in dispute. There is not any substantial controversy in the evidence upon any of the material matters. The record discloses that the traphouse was constructed of rough lumber, two inches thick; that the boards fitted so closely together that the light would not penetrate through the cracks where they joined; that the house was six or seven feet in extent, facing the shooters. This side is called the back of the house, was three and one-half or four feet high, and covered. The other dimensions are not material. The trap was placed to the left of the center of the house, and the loader sat directly behind it to load and determine the angle. It appears that between the date of the construction of the house and the day of the accident a crack appeared between two boards forming the back, caused probably by a board warping or shrinking somewhat. This crack extended for eight or ten inches to the right of the center of the back, and was about one-eighth of an inch wide. It was so narrow that, in order to see through it and distinguish objects, it was necessary to get the eye directly up to the crack. When the gun held by Mrs. Stephens was discharged, a few No. 7½ shot passed through the crack, but the crack was so narrow that each shot grooved the board above and below. These shot were the ones which caused the injury to plaintiff.

1. It is elementary that, in order for plaintiff to recover, he must show that the negligence charged was a proximate cause of his injury. "*Causa proxima, non remota, spectatur.*" In *Mize* v. *Rocky Mt. Bell Tel. Co.*, 38 Mont. 521, 129 Am. St. Rep. 659, 100 Pac. 971, this court defined "proximate cause" as follows: "The proximate cause of an injury is that which in a natural [1] and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred."

In the complaint it is alleged that plaintiff was injured "while inside said traphouse, and then and there engaged in the performance of his duties in loading the trap." And, again, it is

said that, when he was injured, he "was then and there busily engaged with his duties in loading the trap with targets."

The evidence discloses without contradiction these facts: The practice by the members of the club was over when the defendant Steinbrenner went to the traphouse and spoke to the plaintiff, who left his position behind the trap, and told him to set the trap to throw the targets straight away, as some women were going to shoot; that the trap was then loaded; that, when plaintiff returned, another boy, Frank Shunk, had taken plaintiff's position behind the trap; that plaintiff stood to the right of Shunk and to the right of the center of the house, and soon afterward turned and saw this opening in the back wall or the wall which was intended to protect him from the shooters, and looked out through it, turned away, and soon thereafter again placed both eyes up to the opening, looked out, saw a woman standing back at the shooters' position, and while thus engaged was injured. It may be conceded that but for the opening the injury would not have occurred; but this alone is not sufficient. It must appear that the discharge of the shot through this opening would have produced the injury or, in other words, that there was not any new, independent intervening agency. In *Mize* v. *Rocky Mt. Bell. Tel. Co.*, above, in discussing the subject of an intervening cause, this court said: "What intervening [2] cause will break the chain of sequence and so far insulate the first wrongdoer's negligence from the injury as to relieve such wrongdoer? * * * The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequence; and, if such result is attributable to the original negligence as a result which might reasonably have been foreseen as probable, the liability continues. What ought to be foreseen or anticipated as the probable consequence of the wrongdoer's negligence? In the first instance, it is not necessary to show that he ought to have anticipated the particular injury which did result; but it is sufficient to show that he ought to have anticipated that some injury was likely to result as the reasonable and natural consequence of his negligence.

This is the meaning of section 6068 of the Revised Codes, and expresses the rule announced by this court in *Reino* v. *Montana M. L. Dev. Co.*, 38 Mont. 291, 99 Pac. 853.''

Can it be said, then, that these defendants ought to have anticipated that some injury was likely to result to plaintiff, [3] assuming that they knew of the existence of the opening? The plaintiff was employed to perform certain duties, and the performance of those duties while the shooting was in progress required him to occupy a position behind the trap and away from the opening. A witness for the plaintiff testified in response to questions, as follows: ''Q. I will get you to tell the jury in what position a person in that traphouse would have to be, the shot coming from that way, the traphouse facing this way, in what position a person would have to be to receive the shot through that crack where the curve was, in the left eye, the left temple, and nose? A. He would have to be sitting or stooping in the traphouse like this, with his head down, looking at that crack. It would not be possible for a person sitting where the duty of the trap setter caused him to be, in that traphouse, straddle of the trap, to be shot in the face or head at all, or any other part of the body. There was not any duty or anything that required this boy on that Sunday to be in a position over to the right-hand side of the traphouse with his face to that crack. Q. If he had been in attendance, in the execution of his duty, he would have been sitting down straddle of that trap, with his back to the shooter and his face in the same direction in which the shot was going? A. Yes, sir; and in that position it would have been impossible for him to have been injured as he claimed in his complaint.'' This evidence was given by plaintiff's own witness, and is not contradicted or modified at all. It cannot be said, then, that the defendants ought to have anticipated that plaintiff would be doing anything other than that required by his duties, or that he would be at any place in the traphouse other than at the trap when the shooting was in progress; and it cannot be said that they ought to have anticipated that some injury to plaintiff was likely to result as the reasonable and natural consequence of the existence of the opening and people shooting

over it. It must be, then, that the negligence of defendants, assuming they were negligent, was not the proximate, or a proximate, cause of the injury, but that some independent cause intervened to make possible the injury which resulted.

2. The evidence discloses that the boy Shunk went into the traphouse without the knowledge of any of the defendants, but with the permission of the plaintiff, and was told by plaintiff that he might load the trap for a time. It appears from plaintiff's own testimony that at the time of his injury he was sixteen years of age; that for four years or more he had been engaged in loading traps during the spring, summer, and fall of each year; that he was familiar with the use of firearms and understood and appreciated the dangers arising from their use; that he knew defendants and their guest were using shotguns for practice there at that time; that he knew that the load scatters after leaving the muzzle of a shotgun; that he knew that shot had scattered and lodged in the back of the traphouse before the time Mrs. Stephens undertook to shoot; that he knew and appreciated the fact that the house was for his protection, and so jealous was he of his own safety that he would not leave the house until he had attracted the notice of the shooters and someone had come to his relief, and would not even place his hand outside of the house for fear of having it shot; that while looking out through the opening he was expecting every moment that the trap, which was loaded, would be sprung by the man from the outside, and that a shot would be fired directly over the house. As a part of his cross-examination he testified: "Q. While you were expecting this shot, you turned around, looked through the crack to see what you could see? A. Yes, sir. Q. Who could you see through that crack at that time? A. Saw a lady standing there; just a second, that is all. * * * Q. You knew when you looked back there that, if somebody happened to shoot just as you looked back, you might get hit in the eye with the shot? A. I knew it, but I didn't think about it. * * * Q. You had seen through this crack once? A. Yes, sir. Q. And you wanted to see through it again? A. Take a good look, I guess.

* * * Q. You wanted to get as good a look as you could and you thought you would have time to look, and you looked at the crack; just at the time something hit you, is that true? A. Yes, sir. * * * I turned away around the second time. Q. Looked out with both eyes the second time? A. Yes, sir. I just took a glimpse the first time. The second time I just turned right around, with both of my eyes to the crack.''

The evidence is conclusive of the fact that at the time he was injured plaintiff was not engaged in the discharge of his duty. [4] Even though he had a right to be in any part of the house, if his duty so required, yet there was not any duty connected with his work which could possibly call him into the position he occupied at the opening when he was injured. The shooting was in progress. He knew that a shot was about to be fired, and at such time his duty called him to a position directly back of the trap; but, prompted by idle curiosity, he placed himself in a known situation of danger, and but for his act he would not have been injured. Under these circumstances he cannot recover. (1 Labatt on Master and Servant, sec. 333; *Morewood Co. v. Smith,* 25 Ind. App. 264, 57 N. E. 199; *Lynch v. North Yakima,* 37 Wash. 657, 80 Pac. 79, 12 L. R. A., n. s., 261; *Wight v. Michigan Central R. Co.,* 161 Mich. 216, 126 N. W. 414; 1 Thompson's Commentaries on the Law of Negligence, sec. 186.) For, after all else is said, the facts remain that, if plaintiff had not been at the crack or opening, he would not have been injured, and that he had no business at the opening at all.

That the plaintiff knew and fully understood and appreciated the danger of looking out through the opening cannot be in [5] doubt; and under such circumstances, the fact that he was a minor cannot excuse him. In *Krisch v. Richter* (Tex. Civ. App.), 130 S. W. 186, the general rule is stated as follows: ''If he [plaintiff] had the knowledge of the situation and the intelligence to appreciate the dangers thereof, his minority cannot shield him from the consequences of his negligent acts.'' To the same effect is 4 Thompson's Commentaries on the Law of Negligence, section 4095. Neither is it any excuse for plaintiff to say, as he does here in effect, ''I knew the danger, but I did not think

of it at the time" (1 Labatt on Master and Servant, sec. 281), since he was not engaged in the discharge of his duties when injured, and therefore cannot bring himself within the exception announced by this court in *Anderson* v. *Northern Pacific Ry. Co.*, 34 Mont. 181, 85 Pac. 884.

3. It is insisted that the defendants should have warned the plaintiff, and, in failing to do so, were guilty of negligence. The duty of warning implies knowledge of danger, and a warning in this instance would have implied knowledge of the existence of the opening; while, in fact, there is not any evidence that any one of the defendants knew of the opening, but, on the contrary, the evidence, so far as it goes, discloses that they did not know the opening was there, and, of course, if they did not know of its existence, they could not warn against the danger arising from it. But, assuming that they did know of its existence or that the duty to warn may arise from knowledge implied, what warning could the defendants have given the plaintiff? They might have said to him: "There is an opening in the back of the traphouse to the right of the center and to the right of your place of work. Some women are going to shoot at targets thrown straight ahead, and therefore will shoot directly toward and over the house and the opening. The guns may scatter, and stray shot may pass through the opening. Don't leave your place of work and look out through the opening or shot may strike you in the face or eyes, and, if they do, you will be injured, probably seriously." In 4 Thompson's Commentaries on the Law of Negligence, section 4055, the rule of duty is stated as follows: "Generally speaking, an employer is bound to warn and instruct his employees concerning dangers known to him, or which he should know in the exercise of reasonable care for their safety, and which are unknown to them, or are not discoverable by them in the exercise of such ordinary and reasonable care as, in their situation, they may be expected and required to take for their own safety; or concerning such dangers as are not properly appreciated by them, by reason of their lack of experience, their youth, or their general incompetency or ignorance." The plaintiff knew that the opening was there, and had looked out through before he

was hurt. He knew the location of the opening with reference to the position of the trap. He knew that women were going to shoot. Steinbrenner had told him only a few moments before, and he remembered the information given. He knew that they were to shoot directly over the traphouse, for he had set the trap at the directions of Steinbrenner. He testified that he knew that these shotguns scatter, and that shot sometimes imbedded in the back of the traphouse. He knew that, if the gun scattered, stray shot were likely to come through the opening. He knew that, if shot came through and struck him, he would be injured. He knew all the facts of which the defendants could possibly have been possessed, and his judgment upon them was correct. Under these circumstances, there cannot be any [6] difference of opinion that plaintiff fully understood and appreciated the danger, and, with this knowledge and appreciation, there was not any duty imposed upon the defendants to warn him. (*Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843; *Ciriack* v. *Merchants' Woolen Co.*, 146 Mass. 182. 4 Am. St. Rep. 307, 15 N. E. 579; *Helmke* v. *Thilmany,* 107 Wis. 216, 83 N. W. 360; 4 Thompson's Commentaries on the Law of Negligence, sec. 4095.)

While it is of the utmost consequence that a minor servant should have full knowledge and appreciation of the dangers connected with or surrounding his employment, it does not follow necessarily that the master must instruct him. If he has the knowledge and appreciation of the danger, it is wholly immaterial whether his knowledge and appreciation are gained from his own observations and experience, from information and advice given him by others, or from warning and instructions of his master. (*Kuphal* v. *Western Mont. F. Co.*, 43 Mont. 18, 114 Pac. 122.) Whether we assume that the defendants were negligent in some of the particulars charged, and that plaintiff was guilty of contributory negligence, or treat the evidence as showing that plaintiff's negligence was the sole efficient cause of his injury, the result is the same. Upon the record presented, the trial court should have directed a verdict for the defendants, as it was requested to do.

The judgment and order are reversed and the cause is re-manded, with directions to set aside the judgment and dismiss the action.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied June 22, 1911.