WALLACE, APPELLANT, *v.* CHICAGO, M. & P. S. RY. CO. ET AL., RESPONDENTS.

(No. 3,313.)

(Submitted November 20, 1913.  Decided January 26, 1913.)

[138 Pac. 499.]

*Personal Injuries—Master and Servant—Proximate Cause— Tools and Appliances—Duty of Master—Causal Connection Between Injuries and Negligence—Evidence—Insufficiency— New Trial Order—Affirmance.*

Appeal—New Trial Order—Affirmance, When.
   1.  Where an order granting a new trial is general in terms, it will be affirmed if it may be justified upon any of the grounds assigned in the notice of intention to move for a new trial, regardless of the reasons given by the court for its ruling.

Personal Injuries—Negligence—Proximate Cause.
   2.  It is only such negligent acts as bear a direct, proximate and causal relation to an injury that give a cause of action.

   [As to doctrine of proximate and remote causes, see note in 36 Am. St. Rep. 807.]

Same.
   3.  The "proximate cause" of an injury is that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred.

Same—Causal Connection Between Injury and Negligence.
   4.  Before negligence can become the basis of recovery in a personal injury action, a causal connection must be shown between it and the injury complained of.

Same—Proximate Cause—Proof.

 5. While the efficient cause of a personal injury may be proved by indirect evidence, the circumstances must be such as to tend affirmatively to show it, to the exclusion of any theory inconsistent therewith.

Same—Master and Servant—Tools and Appliances—Duty of Master.

 6. An employer is not an insurer, and is not required to select the safest appliances nor the best method for their operation, but only to furnish the appliances in general use for the same purpose, and operated in the same way, by reasonably prudent and careful men under like circumstances.

Same—Causal Connection Between Injury and Negligence—Evidence—Insufficiency.

 7. Where the only ground of negligence, among others, alleged by plaintiff, a machinist's helper, and sustained by the evidence, which bore a causal connection with his personal injury, was the careless removal of a block of wood from in front of a drive-wheel about to be placed on a lathe, and not defendant company's failure to supply reasonably safe and suitable appliances for doing the work, a verdict for plaintiff under an instruction that defendant should be held liable if the injury was proximately caused by a want of safe and suitable appliances, was properly set aside and a new trial granted.

*Appeal from District Court, Custer County; Sydney Sanner, Judge.*

ACTION by William Wallace against the Chicago, Milwaukee & Puget Sound Railway Company and another. From an order granting new trial plaintiff appeals. Affirmed.

*Messrs. Loud & Campbell,* for Appellant, submitted a brief; *Mr. C. S. Loud,* and *Mr. Henry C. Smith,* of Counsel, argued the cause orally.

*Mr. George W. Farr,* and *Mr. H. H. Field,* for Respondents, submitted a brief; *Mr. Farr* argued the cause orally.

HONORABLE JOSEPH B. POINDEXTER, a Judge of the Fifth Judicial District, sitting in place of MR. JUSTICE SANNER, disqualified, delivered the opinion of the court.

Action for personal injury. The plaintiff brought this action for injuries sustained by him while employed as a helper or laborer in the machine shop of the defendant Chicago, Milwaukee & Puget Sound Railway Company on April 4, 1912. The amended complaint, after the usual allegation as to the incor-

poration of defendant company and other formal allegations, and that the defendant Feeley was a machinist in the employ of the defendant railway company, and acting as a superintendent for and on behalf of said defendant railway company and in immediate charge of a certain lathe in the machine shop of the railway company at Miles City, Montana, and that the plaintiff was working under his immediate direction and supervision at the time of the injuries complained of, alleges that it was the duty of the defendants "to provide suitable and safe appliances and to use due and proper skill, care, and diligence in providing suitable, safe, and sufficient appliances for the transfer and passage of said wheels or trucks to and from said lathe"; that the defendants did not provide such suitable, safe, sufficient, or any appliances for such work, but, on the contrary, negligently and carelessly failed to provide any appliances whatever for the safe and proper handling of said wheels or trucks, and negligently and carelessly caused said wheels or trucks to be rolled from the place where they had been detached from the engine across the floor of said machine shop, without providing any suitable means of holding or controlling the same, and that such method and means of handling said wheels or trucks was unsuitable, unsafe and inadequate, all of which was known to the said defendants and each thereof; "that after said drive wheels had been removed from said engine they were, under the direction and control of said superintendent, Joseph Feeley, being moved by the plaintiff and certain other servants, agents, and employees of the said defendant company, each and all of whom were then acting under the immediate supervision, direction, control, and orders of the said defendant Joseph Feeley; that after said drive wheels had been moved from said track in the direction of said lathe, the said defendant Joseph Feeley caused said wheels to be stopped and blocks to be placed under said wheels to prevent the same from rolling or moving; that after said drive wheels had been blocked as aforesaid; the plaintiff, in the proper discharge of his duties as such helper or laborer, and upon the order of the said defendant Joseph Feeley, was engaged in reach-

ing down into a certain pit below the floor of said machine shop, and in taking therefrom certain hooks attached to a chain, and which said hooks and chain were then and there a part of the appliances furnished by the said defendant company, and by the said defendant company used for the purpose of hoisting wheels or trucks from the floor up to and upon said lathe in order that the same might be repaired; that before said hooks and chain would be attached to said wheels, in the ordinary course and conduct of such operations, it was necessary for said wheels to be moved nearer to said lathe than they were at the time they were so blocked as aforesaid; that while this plaintiff was then and there so engaged in the proper discharge of his duties as such helper or laborer, as hereinbefore alleged, and while then and there in a stooping or kneeling position with his back towards said wheels, the said defendant Joseph Feeley carelessly and negligently gave an order to those certain servants, agents, and employees of the said defendant company who were assisting in the moving of said wheels, in relation to the blocks which had been placed under said wheels, the exact language of which said order plaintiff is now unable to state, the substance and effect of said order being, however, a direction to said servants, agents, and employees to remove said blocks from under said wheels; that said servants, agents, and employees of said defendant company obeyed said order and direction, and negligently and carelessly moved or displaced the block from in front of said wheels, while this plaintiff was then and there in a place of danger in such kneeling position in front of said wheels, and without any warning to this plaintiff, and then and there negligently and carelessly caused and permitted said wheels to roll over, onto, and upon this plaintiff, thereby carelessly and negligently injuring plaintiff upon his body and person, as hereinafter more particularly alleged.'' The plaintiff's injuries are then described, and damages are claimed on account thereof. The defendants admit the employment of plaintiff as alleged and the injuries, but deny the negligence charged by the plaintiff, and set up that if there was any injury to plaintiff, it was

due to the negligence of a fellow-servant.   They also plead contributory negligence and assumption of risk by plaintiff.   On the trial verdict and judgment were for the plaintiff.   Defendant's motion for a new trial was granted, and plaintiff has appealed.

The order granting a new trial was general in its terms, and, regardless of the reasons given by the court below for its ruling, [1] if it may be justified upon any of the grounds assigned in the notice of intention to move for a new trial, it must be affirmed.   The notice of intention contained all the statutory grounds, including insufficiency of the evidence to justify the verdict, and that the verdict is against the law.   Many alleged errors were urged as warranting the order.   It is only necessary to consider the assignment of insufficiency of the evidence, to show that the court was correct in entering the order appealed from.

It appears that the plaintiff and other laborers were members of a wheel press gang at defendant company's shop in Miles City, and on April 4, 1912, were engaged in moving the drive wheels of a locomotive from a track to a lathe, some thirty feet distant, for the purpose of truing up the wheels; that the wheels were very heavy, and it was necessary to block them in order to hold them stationary; that for this purpose they used short wooden blocks about two inches by six or eight inches, placed in front of and behind the wheels; that this blocking was required on account of the block of iron cast between two or four of the spokes of each wheel, called a counterpoise or balance; and that defendant Feeley was in charge of the lathe.   The testimony is conflicting as to whether or not the work of moving the wheels by the wheel press gang on the occasion referred to was under the direction and supervision of defendant Feeley.   Testimony was also given in regard to the appliances in use; but, as we view the case, it is needless to encumber this opinion with a recital thereof.

Plaintiff testified that they had brought the wheels from the track to the usual position in front of the lathe where they were

blocked preparatory to attaching the tackle necessary to raise the wheels into the lathe; that the counterpoise or weight was in a forward position when the wheels were so blocked; that a portion of this tackle was in a pit directly in front of the place where the wheels were stopped; and that it was a part of his duty to get down in the pit and take out the tackle; that he helped to block the wheels with the wooden blocks, placed as above described; that the block "was sufficient to hold the wheels if not removed"; that the pit was about eighteen inches deep, and that he was reaching down into the pit when injured. In describing the accident he said: "I got down sort of this way [indicating] to reach down into the pit in this position. When I was down in that position the wheels were just about there [indicating]. This was after the wheels had been blocked. While I was in this position Mr. Feeley said: 'All right boys,' and the blocks was kicked away and the wheels came rolling right onto my left leg. When I was in this position Mr. Feeley was standing in front at the side of the wheel that went over my leg, and just beside the block which was placed in front of the wheel. Some person kicked the block away that I had placed in front of the wheel. I did not see any other person near the block at the time than Mr. Feeley. At this time I was facing the lathe. I did not see Mr. Feeley kick the block. I was lifting the chains out at the time it was kicked. While I was in this position I heard a sound as if some one was ordering or saying all was right and a sound in the nature of a sort of a knock or shove as if the block was kicked along the floor, and just at that moment I received the injury." He stated several times during the course of his testimony that the blocks were sufficient to hold the wheels, and also stated that he had often gotten the chains from the pit, that he knew the wheels were very heavy, and that he had worked for three months in the shop. On cross-examination he testified: "After I was stooping down there I heard somebody say something; it was a sound of a voice; I simply heard somebody talk. It appeared to me like it was 'Go ahead, boys.' That was what I heard. Q. Who was it said that?

A. I don't— Mr. Feeley. Q. Well, how do you know it. was Mr. Feeley? A. It was his orders. Generally he gave the orders. Q. Well, do you know that he gave them at that particular time? A. Yes, sir; because we were all under his orders and had to obey them. He gave them at that particular time. There was no one else to give orders. Q. Well, are you positive in what you heard that was said, or do you just think you heard somebody say something? A. No, sir; I don't think it.'' And again he said: "I heard the sound of a block kicked, but I didn't see anybody kick it. I heard the sound that somebody struck it with their toe.'' And again he said: "I have never known of the blocks coming out from under the wheels, and never known of the vibration of the shops to jar the blocks from under the wheels.'' He also testified: "Q. And you knew that if it rolled forward and your leg was in front of it, it would probably roll onto your leg, didn't you? A. Yes, and I knew it couldn't roll forward if it was blocked. I was sure that it was blocked before I got in that position.'' The accident was described as happening in about the same way, by the witness Polys. It is apparent from plaintiff's testimony that the wheels were taken from the track to the lathe in safety, and that little remained to be done but to attach the tackle and raise the wheels into position in the lathe.

It is urged by plaintiff that the defendant railway company was negligent in failing to provide reasonably safe appliances for doing the work, and that its failure to provide safer means than those in use at the time, to transfer the wheels from the track to the lathe, was the proximate cause of plaintiff's injury. The wheels had reached a position in front of the lathe, and were blocked to prevent them rolling either forward or backward. It is apparent, as testified to by plaintiff, that the accident could not have happened had the block not been removed from in front of the wheel. While the defendant railway company may have been negligent in failing to provide reasonably safe appliances for the plaintiff to do the work of moving the wheels—a question we do not now decide—yet such failure in

no wise contributed to plaintiff's injury. It was the negligent removal of the wooden block from under the wheel, permitting the wheel to roll on plaintiff, that was the proximate cause of the injury; no other conclusion can be drawn from the evidence.

It is not every negligent act that gives a cause of action; it is [2] only such neglect of duty as bears a direct, proximate, and causal relation to the injury. (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Andree* v. *Anaconda C. M. Co.*, 47 Mont. 554, 133 Pac. 1090.) This court has defined proximate cause as follows: "The proximate cause [3] of an injury is that which in a natural and continuous sequence, unbroken by any new independent cause, produces the injury, and without which the injury would not have occurred." (*Mize* v. *Rocky Mt. Bell Tel. Co.*, 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971; *Therriault* v. *England*, 43 Mont. 376, 116 Pac. 581.) "It is a rule, so fundamental as to be axiomatic, * * * that before negligence, however [4] established, can become the basis of recovery, causal connection must be shown between it and the injury complained of." (*Westlake* v. *Keating Gold Mining Co., ante*, p. 120, 136 Pac. 38.) In *De Sandro* v. *Missoula Light & Power Co., ante*, p. 226, 136 Pac. 711, this court said: "It is not sufficient that the plaintiff prove the injury. It is necessary that he go further and show by some substantial evidence the causal connection between the negligence of the defendant and the injury; for the master cannot be held liable if his negligence was merely a condition, as opposed to the efficient cause of the injury. (Labatt on Master and Servant, 2d ed., sec. 1570; *Monson* v. *La France Copper Co., supra.*) The efficient cause may be shown by indirect evidence, but it cannot be said to be established by such [5] evidence unless the circumstances are such that they not only tend affirmatively to show it, but also tend to exclude any other. (*Monson* v. *La France Copper Co., supra; McGowan* v. *Nelson*, 36 Mont. 67, 92 Pac. 40; *Shaw* v. *New Year Gold Mines Co.*, 31 Mont. 138, 77 Pac. 515.)"

Applying these principles to the present case, we conclude that the only ground of negligence, alleged by plaintiff and sus-
[6, 7]  tained by the evidence, which bore a causal connection with the plaintiff's injury, was the careless and negligent removal of the block of wood from in front of the wheel. The only logical inference that can be drawn from the testimony of plaintiff and his witnesses is that this obstruction to the movement of the wheels was removed by defendant Feeley or by his order, and that this was the proximate and sole cause of the injury. The appliances provided brought the wheels to the lathe in safety, and these appliances, whether safe or otherwise, or the failure of the defendants to provide other appliances, had no direct connection with the cause of plaintiff's injury. At the time plaintiff was injured, the work of moving the wheels to the lathe, for the time at least, had ended; so necessarily had ended the use of the appliances provided for such purpose. Had the block of wood not been removed, the accident could not have happened, and, as plaintiff testified, he could not have been injured. It is therefore apparent that the failure to provide different or safer means to move the wheels from the track to the lathe in no wise contributed to plaintiff's injury. It may be that some safer means might have been devised and put in use by the defendant company that would have lessened the probability of accident, but the law does not require the employer to select the safest appliances nor the best method for their operation. The employer is not an insurer, and absolute safety is unattainable; his duty is discharged when he furnishes the appliances in general use for the same purpose and operated in the same way by reasonably prudent and careful men under like circumstances. (*Kinsel* v. *North Butte Min. Co.*, 44 Mont. 445, 120 Pac. 797; *Gregory* v. *Chicago, M. & St. Paul Ry. Co.*, 42 Mont. 551, 113 Pac. 1123; *Cummings* v. *Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904; *Southern Ry. Co.* v. *Lewis*, 110 Va. 847, 67 S. E. 357.) In this case it was not the failure to furnish reasonably safe appliances, but the misuse of the appliances provided, that caused the injury.

The jury were instructed that they were to consider the defendant Feeley as a fellow-servant of plaintiff; also, if they should find from the evidence that the defendant railway company had not in use at the place of the accident reasonably safe and suitable appliances or methods for doing the work, and if they should find that plaintiff's injuries were directly and proximately caused by the want of such safe and suitable appliances or methods, then the railway company would be liable even if they should also find that the negligent act of a fellow-servant aided or concurred in causing the injury. As has been shown, the proximate cause of plaintiff's injury was the negligent act in removing the obstruction from under the wheel; hence the failure to provide reasonably safe appliances had no causal connection with plaintiff's injury. Under the instructions the jury should have returned a verdict for the defendants. The court's order setting aside the verdict was therefore justified.

Respondents insist that plaintiff assumed the risk of such an injury when he entered defendant company's employ, and for that reason cannot recover in any event. It cannot be said that the careless and negligent removal of the block of wood from under the wheel was one of the risks of the business assumed by the plaintiff. But respondents urge that plaintiff assumed the risk of injury resulting from the negligence of fellow-servants, and that, as the injury was the result of the negligence of a fellow-servant, plaintiff cannot recover. While it is true that plaintiff assumed the risk of injury from negligence of fellow-servants, under the evidence it cannot be said, as a matter of law, that defendant Feeley was the fellow-servant of plaintiff. We think there was sufficient conflicting testimony as to the character of the employment, the duties and authority of Feeley, to raise a question for the jury, and that this question should have been submitted to the jury under proper instructions. Upon another trial, should the jury find that Feeley was the fellow-servant of plaintiff, the verdict would necessarily be that the defendant company is not liable for plaintiff's injuries. On the other hand, should the jury believe the plaintiff's story and

find that Feeley was a vice-principal of defendant company, and not a fellow-servant of plaintiff, and that plaintiff was not guilty of contributory negligence, then the verdict would necessarily follow for plaintiff.

The order granting a new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.