NEILSON, Respondent, *v.* MISSOULA CREAMERY CO., Appellant.

(No. 4,286.)

(Submitted January 13, 1921. Decided February 28, 1921.)

[196 Pac. 357.]

*Personal Injuries—Contributory Negligence—Nonsuit—When Improper.*

Personal Injuries—Contributory Negligence—Matter of Defense.
	1. Contributory negligence is a matter of defense to be established by a preponderance of the evidence.

---

1. Authorities passing on general rules as to effect of contributory negligence on liability are collated in notes in 55 Am. Dec. 666; 8 Am. St. Rep. 849; 21 L. R. A. (n. s.) 614; and 48 L. R. A. (n. s.) 628.

Same—*Prima Facie* Case Made When.

  2. Plaintiff in an action for personal injuries has made out a *prima facie* case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it.

Same—Presumption of Contributory Negligence—When Nonsuit Proper.

  3. Where the circumstances attending a personal injury as detailed by him raise a presumption that he was not at the time in the exercise of due care, he has failed to make out a case for the jury, and the burden is then upon him to introduce evidence to remove that presumption, failing in which he may properly be nonsuited.

Same—Contributory Negligence—Knowledge of Danger not Sufficient to Constitute.

  4. From mere knowledge on the part of plaintiff of the place at or appliance by means of which he was injured, it does not necessarily follow that he must have appreciated the danger to which he was exposed, or was guilty of contributory negligence.

Same—Injury on Sidewalk—When Negligence not Imputable to Plaintiff.

  5. Where plaintiff's evidence did not disclose that she failed to exercise that degree of care which a person of ordinary prudence would have exercised under like circumstances, when, while traveling on a sidewalk, she was struck by a large gate so constructed as to traverse the walk, and which was blown open by a violent windstorm, she was improperly nonsuited, negligence not having been imputable to her when she had no reason to apprehend danger.

  (Mr. Justice Holloway dissenting.)

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

Action by Myrtle Neilson against the Missoula Creamery Company. Judgment of nonsuit, and from an order granting a new trial, defendant appeals. Order affirmed.

*Mr. William Wayne,* for Appellant, submitted a brief and argued the cause orally.

The law required of the plaintiff the exercise of reasonable care for her own safety and presumed that she would exercise it. (Rev. Codes, sec. 7962, subd. 4; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.) "The duty of guarding an individual against injury which the law imposes upon a railway company is no higher or greater than that which the individual owes to care for his

---

3. When burden of disproving contributory negligence must be assumed by plaintiff, see note in 39 Am. Rep. 511.

5. Liability for injuries caused by gate opening outward in street, see note in Ann. Cas. 1916E, 458.

own safety." (*Southern Ry. Co.* v. *Bailey,* 110 Va. 833, 27 L. R. A. (n. s.) 379, 67 S. E. 365.) A slight deviation by plaintiff from the course she was pursuing along the sidewalk toward the gate would have put her in a place of absolute safety, as she well knew from her knowledge of the physical surroundings. The probabilities are that she thought nothing about the matter and was guilty of that thoughtless inattention which is the very essence of negligence. (*Tasker* v. *Farmingdale,* 91 Me. 521, 40 Atl. 544; *Zvanovich* v. *Gagnon & Co.,* 45 Mont. 180, 122 Pac. 272.)

The plaintiff failed to make out a *prima facie* case and the order granting a nonsuit was proper. (*Shaw* v. *New Year Gold Min. Co.,* 31 Mont. 138, 77 Pac. 515.) "This requirement [the burden of making out a *prima facie* case] is not met if the evidence leaves it doubtful whether the injury may not with equal propriety be attributed to one or more causes other than that alleged." (*Andree* v. *Anaconda Copper Mining Co.,* 47 Mont. 554, 133 Pac. 1090; *De Sandro* v. *Missoula Light & Water Co.,* 48 Mont. 226, 136 Pac. 711; *Wallace* v. *C. M. & P. S. Ry. Co.,* 48 Mont. 427, 138 Pac. 499; *Howard* v. *Flathead Ind. Tel. Co.,* 49 Mont. 197, 141 Pac. 153.)

No appearance in behalf of Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

In this action the plaintiff seeks to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The specific cause of her injury was the blowing shut of the east half of a large gate maintained by the defendant as an entrance for vehicles into its corral, which, when being opened or shut, traversed a portion of the sidewalk. The cause was tried before a jury, and at the conclusion of plaintiff's case defendant interposed a motion for a nonsuit, which was granted, and judgment entered in favor of the defendant. Plaintiff then moved for a new trial, which was granted. From the order granting a new trial, appeal is

prosecuted, and error thereon is predicated. Thus a refer-
ence to the evidence is necessitated.

Plaintiff testified that she is a married woman, twenty-five
years of age, living with and keeping house for her husband,
and that in July, 1915, she lived at 639 Howell Street, north
of the railroad track of the Northern Pacific Railway Com-
pany in Missoula, Montana, and was taking care of some rooms
in the Higgins Block on Higgins Avenue and Main Street;
that she was four months in a family way, and that the injury
complained of caused her to lose about ten weeks' work at the
rate of $20 per month, in addition to her inability to perform
her regular household duties. Further she testified: "On the
morning of July 1, 1915, I left home at 10 minutes past 7
to go to work. * * * I left home on Howell Street, and
proceeded to cross at the Owens Street crossing, and then on to
the north, or left-hand, side of Railroad Street; then I would
go [went] in an easterly direction for about half a block; then
I turned southeast and crossed the street clear to the other
side. There is a sidewalk on that side of the street and I got
on to it. The Missoula Creamery is right next to this side-
walk. There is a fence over on the south side of the sidewalk,
running east and west, about six feet high. The fence is right
against the sidewalk, which is nine feet wide or more. After
getting on to the sidewalk I proceeded in an easterly direction.
I noticed some gates there, in the corner of the fence. I don't
remember whether it was right square in the corner, or a little
distant from the corner, toward the middle. The gate would
be eighteen feet wide or more, and was in two sections, about
nine feet each. On this morning, when I first saw the gates,
they were not open. They were open when Mr. Custer came
and opened them. Mr. Custer came out of the building,
opened the gate, and left it go back into, toward the fence,
and he went inside the fence, and just as I got to it the wind
blew it shut and it knocked me down. I was about 100
feet from the gate when he opened it. I was in the street.
The gate came so quick, when it struck me, I could not get

out of the way of it, and it knocked me down and unconscious. I don't know whether Mr. Custer opened both sides of the gate. I know he opened part of it. I was right about the center of the sidewalk when the gate hit me. It was a very windy day and the wind was blowing from the east. The wind blew the gate shut, and it hit me on the left side, on the arm and side. * * * I was facing directly east, on the sidewalk. * * * It must have been the center of the gate that struck me. I was in the center of the walk. I was just about the center of the opening in the fence when the gate struck me; probably just about the east end. The shock knocked me down, and I know I came into violent contact with the ground. I lost my senses at that time. * * * It had bruised and hurt me awful. I was bruised all on the left side and arm, and my back hurt. There were marks on my arm. There were two bruises on my elbow. After my injury, I didn't take up my duties in the Higgins Block at all. I have never been able to resume any hard work. I am not capable of doing hard work now, as I was before I was hurt. I have not worked out since the injury. * * * Mr. Custer used to be manager of the Creamery Company at the time this injury occurred to me. I just saw him come out of the creamery building, come down toward the gates and open them —or one, don't remember which—he just let it go back against the fence and went on into the yard. * * * When I first saw Mr. Custer, I was on the pavement on Railroad Street about fifty feet west of the gate, when I saw Mr. Custer open the gate. I was about in the center of Railroad Avenue when I first saw him open them. I got on to the sidewalk about twenty feet west of the gate and proceeded east. * * * My general health was good before this accident happened. My arm never bothered me before that and I had full use of my arm before that. I worked at housework. I was capable of doing pretty hard work. I never had my arm or leg injured before in any way. * * * At the time I got hurt I was pregnant, and had a child in December, 1915. * * * Be-

fore this injury I weighed 116 pounds. I weigh 103 now. I have never weighed 116 pounds since I was injured.''

On cross-examination plaintiff testified: ''I at least saw Mr. Custer open the east gate and put it against the fence. The wind was still blowing. At the time he opened the gate and got it back I was just about probably forty or fifty feet from the gate. As to whether or not I saw him swing the gate back against the fence, and saw he didn't latch it, I didn't notice. I didn't see him go back to the gate and do anything. I just simply saw him open the gate and push it against the fence. * * * The wind was still blowing. Yes; I know what the wind will do to an open gate, if it is open and not latched. I knew the gate was open, and the wind was blowing, as I went along there. * * * My baby is the first child of my own I ever had. I felt fine before the accident. When women are not feeling badly, they are usually feeling fine when they are pregnant, and they are heavier at that period than at other periods. * * * The time elapsing between the time I saw him open the gate and the time it struck me was between five and ten seconds, I should judge, just while it took me to go about twenty feet before I was struck. The middle of the gate struck me. * * * I did not still get paid for the ten weeks I was unable to work after the injury. I hired someone to do that work, and they got all the money.''

Mr. Chief Justice Brantly, speaking for the court in the [1–3] case of *George* v. *Northern Pacific Ry. Co., ante,* p. 162, 195 Pac. 869, said: ''In this jurisdiction it is the rule that contributory negligence is a matter of defense, to be established by preponderance of the evidence. The plaintiff has made out a *prima facie* case when his evidence discloses injury to himself and that the negligence of the defendant was the proximate cause of it. (*Nelson* v. *City of Helena,* 16 Mont. 21, [39 Pac. 905]; *Hunter* v. *Montana C. Ry. Co.,* 22 Mont. 525, [57 Pac. 140]; *Monson* v. *La France Copper Co.,* 39 Mont. 50, [133 Am. St. Rep. 549, 101 Pac. 243]; *Therriault* v. *England,* 43 Mont. 376, [116 Pac. 581]; *Howard* v. *Flathead Ind.*

*Tel. Co.*, 49 Mont. 197, [141 Pac. 153].)  It is the rule that
when the circumstances attending the injury, as detailed by
the plaintiff's evidence, raise a presumption that he was not
at the time in the exercise of due care, he has failed to make
out a case for the jury.  The burden is then upon him and
if he fails to introduce other evidence to remove this pre-
sumption, he is properly nonsuited.  (Cases cited *supra; Har-
rington* v. *Butte, A. & Pac. Ry. Co.*, 37 Mont. 169, [16 L. R. A.
(n. s.) 395, 95 Pac. 8]; *Longpre* v. *Big Blackfoot Mill. Co.*,
38 Mont. 99, [99 Pac. 131]; *Zvanovich* v. *Gagnon & Co.*, 45
Mont. 180, [122 Pac. 272].)''

From proof that the plaintiff had knowledge, as of a
**[4]** physical fact, of the place or appliance by means of
which she sustained the injury complained of, it does not
necessarily follow that she must have appreciated the danger
to which she was exposed therefrom.  Mere knowledge of the
offending instrumentality does not constitute contributory
negligence.  (20 R. C. L. 110, 111, and notes.)

In *Leonard* v. *City of Butte*, 25 Mont. 410, 65 Pac. 425, this
court held that in a sidewalk composed of cement blocks, in
which four were broken and replaced, the new blocks being
so hard and smooth that 100 persons slipped and fell thereon
in about a year, and twenty-five within two months of the
plaintiff's accident, the question whether the walk was defec-
tive and in a dangerous condition was for the jury.

In *McCabe* v. *City of Butte*, 46 Mont. 65, 125 Pac. 135,
wherein plaintiff sought recovery of damages for personal
injury sustained by fall on the sidewalk in consequence of a
hole therein, this court, speaking through Chief Justice
Brantly, used language which is particularly pertinent to the
present case, as follows: ''The evidence furnishes no basis for
an inference of contributory negligence on the part of the
plaintiff.  She was traveling along the walk in the ordinary
way.  She had a right to proceed rapidly, if she chose to do
so.  Having no knowledge of the existence of the defect, she
was not bound to make inspection, in order to ascertain the

existing condition; and though a woman may be pregnant, she is one of the public, and has a right to the use of the streets in the same manner and with the same presumption as to their condition as other persons.''

From the evidence it does not appear *prima facie* that [5] plaintiff failed to exercise that degree of care for her own safety which a person of ordinary prudence under like circumstances would have exercised, and therefore it cannot be held as a matter of law that she was guilty of contributory negligence. The decision of the question was properly within the province of the jury. (20 R. C. L. 116.) She had a right to be upon the sidewalk, even though possessed of knowledge that the gate was in the position stated, and that, upon being opened or closed, it would traverse the sidewalk. She was justified in belief that while on the sidewalk she was in a position free from hazard, and that, if the gate were opened by the defendant, it would not endanger the safety of pedestrians. It was proper for her to presume that the gate was left in such position as not to injure those using the sidewalk. Negligence is not imputable to the plaintiff when under the surrounding circumstances she had no reason to apprehend danger. (29 Cyc. 514.)

For the reasons stated, the order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS and COOPER concur.

MR. JUSTICE HOLLOWAY dissents.