HOLLAND, ADMR., APPELLANT, v. PENCE AUTOMOBILE
CO. ET AL., RESPONDENTS.

(No. 5,619.)

(Submitted February 18, 1925. Decided March 12, 1925.)

. [234 Pac. 284.]

*Personal Injuries—Automobiles—Failure of Dealer Properly
to Inspect Car Before Sale—Contributory Negligence of
Buyer—Nonsuit Proper.*

1. Under the rule that when plaintiff's own case in a personal
injury action presents evidence which, unexplained, makes out
*prima facie* contributory negligence on his part, he cannot recover
unless he produces further evidence exculpating him, *held*, that
where an expert automobile mechanic after buying a car drove it
for 700 miles during which time the foot accelerator on two
occasions failed to release, and, on the day of accident while
driving with another skilled mechanic when it again had caught,
declined to stop and refused the latter's offer to assist in remedy-
ing the defect but drove on with the result that he lost control of
the car and was fatally injured, he was guilty of such careless and
reckless conduct as barred the administrator of his estate from
recovery of damages for his death from the dealer for failing to
make proper inspection of the car before delivering it to deceased,
and judgment of nonsuit was proper.

*Appeal from District Court, Silver Bow County; Joseph R.
Jackson, Judge.*

ACTION by James G. Holland, as administrator of the estate
of John G. Holland, deceased, against the Pence Automobile
Company and another. Judgment of nonsuit and plaintiff ap-
peals. Affirmed.

*Messrs. Maury & Maury*, for Appellant, submitted a brief;
*Mr. H. L. Maury* argued the cause orally.

The Butte Buick Company sold to John G. Holland a Buick
car which it had failed to inspect for a defect which therein

---

1. Burden of disproving contributory negligence, see notes in 39
**Am. Rep.** 511; 58 **Am. Rep.** 229.
    What is contributory negligence, see notes in 32 **Am. Rep.** 98; 8
**Am. St. Rep.** 849.

existed. Because of the defect John G. Holland was killed. Nor was there any intervening independent occurrence to break the chain of cause and effect. A contractual relation existed between the parties to the sale.

A maker or vendor of an article dangerous to life and limb, who sells without notice of the dangerous qualities, is liable to any purchaser who suffers an injury therefrom which might reasonably have been anticipated; and this whether any privity of contract existed between the parties or not. (*Huset* v. *J. I. Case Threshing Machine Co.,* 120 Fed. 865, 61 L. R. A. 303, 57 C. C. A. 237; *Wellington* v. *Downer Kerosene Oil Co.,* 104 Mass. 64; *Lewis* v. *Terry,* 111 Cal. 39, 52 Am. St. Rep. 146, 31 L. R. A. 220, 43 Pac. 398.) Automobiles are dangerous instruments. (*Johnson* v. *Cadillac Motorcar Co.,* 194 Fed. 497.) The dangerous article doctrine has been applied to automobiles in *Johnson* v. *Cadillac Motor Car Co.,* 261 Fed. 878, 8 A. L. R. 1023 (upholding 194 Fed. 497, *supra*); *MacPherson* v. *Buick Motor Co.,* 217 N. Y. 382, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696, 13 N. C. C. A. 1029, 111 N. E. 1050; *Quackenbush* v. *Ford Motor Co.,* 167 App. Div. 433, 153 N. Y. Supp. 131.

The Buick Company had bought the car from Pence Automobile Company, and had paid for it before selling it to Holland. Title was in Butte Buick Company. The situation as between Holland and Butte Buick Company was a simple one of buyer and seller. The seller held itself out as having sufficient knowledge and skill to deal in and handle these machines with reasonable safety to the public, and impliedly promised to use such knowledge and skill whenever it should have dealings with the public *in re* Buick automobiles. (Shearman & Redfield on Negligence, 6th ed., 1797.)

The lower court erred in granting the Pence Automobile Company's motion for nonsuit. It appeared at the trial that defective Buick parts are traded for sound ones at Billings, Montana, Pence Automobile Company of Minnesota being the trader; that the bills of lading for Buicks are made out by Pence Auto-

mobile Company at Minneapolis, Minnesota; that Pence Automobile Company collects the purchase price for the Buicks from the retail dealers in its territory; but that the actual physical Buicks are made at Flint, Michigan, by a third corporation known as Buick Motor Company, and are shipped to retail dealers from Flint, Michigan, and are never seen by Pence Automobile Company. Thus it is seen that the Pence Automobile Company does not make Buicks. It only sells Buicks. The Buick Motor Company, suable nowhere but in Michigan, because it does business nowhere else, makes Buicks. And by the automobile decisions so far, only the maker has been charged for injuries to consumers under the dangerous article rule.

The maxim, "The law respects form less than substance" (sec. 8757 Rev. Codes 1921), prescribes the mental attitude with which such phantoms as Pence Automobile Company should be approached. Further, the maxim "For every wrong there is a remedy" (sec. 8752) has been sought to be evaded by Butte Buick Company and the Buick Motor Company of Michigan, by the creation of the two-way buffer Pence Automobile Company. Regarding the uninspected Buick sold to Holland as a deadly article, and coupling such status with the fact that title was once in Pence Automobile Company, the Pence liability to even remote vendees becomes easily chargeable. On persons dealing with dangerous things, in their relation to the public, we quote from Shearman & Redfield on Negligence, sixth edition, at p. 1797: "Such persons in dealing with things either imminently dangerous in kind, or such as are rendered dangerous by defects of which they have or ought to have knowledge, hold themselves out as possessing competent knowledge and skill to manufacture, prepare, deal in and handle such machines, instrumentalities or substances with reasonable safety to the public, and impliedly promise that they will exercise such knowledge and skill in each instance. While generally a manufacturer, vendor or bailor is not liable to third parties, to whom

he is under no contractual obligation, for negligence in the construction and manufacture, or sale of such articles as he handles; yet he is so liable for resulting injuries where his negligence causes imminent danger to human life or health and the article is used in the manner intended, as where he impliedly invites third parties to use machines or instrumentalities, rendered defective by his negligence in their manufacture, or sells or bails the same knowing them to be defective or where he is chargeable with such knowledge." (Citing: *Standard Oil Co.* v. *Murray,* 119 Fed. 572, 57 C. C. A. 1; *Woodward* v. *Miller,* 119 Ga. 618, 100 Am. St. Rep. 188, 64 L. R. A. 932, 46 S. E. 847; *Boston Woven Hose etc. Co.* v. *Kendall,* 178 Mass. 232, 86 Am. St. Rep. 478, 51 L. R. A. 781, 59 N. E. 657; *Provost* v. *Cook,* 184 Mass. 315, 68 N. E. 336; *Crandall* v. *Boutell,* 95 Minn. 114, 103 N. W. 890; *Kahner* v. *Otis Elevator Co.,* 183 N. Y. 512, 76 N. E. 1097.)

It appears that Holland was an experienced automobile mechanic but not an experienced driver. The emergency rule relieves Holland from any imputation of negligence during the five or six seconds of his descent down the incline. It is well settled that (in the words of the annotation at 6 A. L. R. 680) "An automobile driver who by the negligence of another and not by his own negligence is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice. * * * Nor, if he so acts under these circumstances, is he guilty of contributory negligence." (Citing among many other cases: *Lehigh Valley R. Co.* v. *Kilmer,* 231 Fed. 628, 145 C. C. A. 514 (*certiorari* denied, 242 U. S. 627, 61 L. Ed. 535, 37 Sup. Ct. Rep. 13 [see, also, Rose's U. S. Notes Supp.]); *Dickinson* v. *Erie R. Co.,* 81 N. J. L. 464, 37 L. R. A. (n. s.) 150, 31 Atl. 104.)

*Mr. J. A. Poore,* for Respondents, and *Mr. G. A. Will,* of the Bar of Minnesota, of Counsel for Respondent, Pence Automobile Company, submitted a brief; *Mr. Poore* argued the cause orally.

This is not an action for breach of contract. There is no claim made that there was any breach of an implied or express warranty, but that the defendant Butte Buick Company owed a legal duty to John G. Holland to inspect the car for this particular claimed defect; that it failed to perform such duty, and that this failure was a proximate cause of his death.

Cases which involve the liability of a defendant to those with whom he does not stand in privity of contract may be grouped into three classes: (1) Where the thing causing the injury is of a noxious or dangerous kind; (2) Where the defendant has been guilty of fraud or deceit in passing off the thing; (3) Where the defendant has been negligent only in some respect with reference to the sale or construction of a thing not imminently dangerous.

Defendant Butte Buick Company does not fall within the first class mentioned above, because an automobile as such is not an imminently dangerous article. It does not fall in the second class, because there is no allegation or proof that defendant Butte Buick Company knew of any defect in the car at the time of sale to Holland brothers. The third class of cases, relating to the sale of a thing not in its nature dangerous, rests upon the principle that as to such things there is no general or public duty, but only a duty which arises from contract, out of which no duty arises to strangers to the contract. The leading case of this class is *Winterbottom* v. *Wright,* 10 Mees. & W. 109. (See, also, *McCaffrey* v. *Mossberg & Granville Mfg. Co.,* 23 R. I. 381, 91 Am. St. Rep. 637, 55 L. R. A. 822, 50 Atl. 651; *Standard Oil Co.* v. *Murray,* 119 Fed. 572, 57 C. C. A. 1; *Huset* v. *J. I. Case Threshing Mach. Co.,* 120 Fed. 865, 61 L. R. A.

303, 57 C. C. A. 237; *Olds Motor Works* v. *Shaffer,* 145 Ky. 616, Ann. Cas. 1913B, 689, 37 L. R. A. (n. s.) 560, 140 S. W. 1047; 1 Thompson on Negligence, sec. 828; Shearman & Redfield on Negligence, sec. 690; 29 Cyc., p. 478.) Under this class there is no duty to inspect and no liability except upon contract.

It is contended, however, by appellant that an exception has been made of the automobile in that if it is defectively constructed, it is placed in the same general class with the loaded firearm or any other article imminently dangerous to life and limb, and his counsel cite a number of cases as supporting this theory. An examination of these cases will show that each and every one of them applies only to the manufacturer of the article, or to the person who knew of its dangerous character.

The Butte Buick Company, as the record shows, relied upon the inspection made at the factory. So far as the record shows, the Buick Motor Company is a reputable manufacturer; it makes a standard and well-known car; it warrants, under the laws of this state, that the cars it constructs are free from any latent defects (sec. 7612, Rev. Codes), and that they are fit for the purpose of intended use (sec. 7613.) The Butte Company has a right to and does rely on this.

Pence Automobile Company's Liability. The evidence contained in the record so far as concerns this defendant amounts simply to this: That the Pence Automobile Company is a corporation organized under the laws of Minnesota; that it is engaged in the business of distributing new Buick automobiles and parts throughout the northwest; that Butte Buick Company ordered the automobile which was subsequently sold to the Holland brothers direct from the Pence Automobile Company, and it in turn ordered it from the factory, and that the factory, Buick Motor Company, of Flint, Michigan, shipped the automobile direct to Butte Buick Company, at Butte, Montana, with bill of lading through Pence Automobile Com-

pany. That the automobile was never in possession of Pence Automobile Company, and was never inspected by it. That the automobile in question was not assembled or built or made by Pence Automobile Company. Under this state of facts, upon what theory can Pence Automobile Company be liable to appellant? This action was brought against the defendant Pence Automobile Company upon the theory that Pence Automobile Company assembled and fitted together the parts of this car; that the car was defectively constructed in that the toe throttle had a tendency to catch, and that the defendant Pence Automobile Company failed to inspect for this defect, and placed the car in the channels of trade, knowing it would be sold to the public for use as an automobile. He absolutely failed in his proof, and the trial court ruled correctly in granting the motion of this defendant for a nonsuit.

Decedent's Contributory Negligence. It is the rule that when the circumstances attending the injury raise a presumption, as they do here, that the plaintiff was not at the time in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove this presumption, he is properly nonsuited. (*Neilson* v. *Missoula Creamery Co.,* 59 Mont. 270, 276, 196 Pac. 357; *George* v. *Northern Pacific Ry. Co.,* 59 Mont. 162, 171, 196 Pac. 869; *Harrington* v. *Butte etc. Ry. Co.,* 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot M. Co.,* 38 Mont. 99, 99 Pac. 131; *Zvanovich* v. *Gaynon & Co.,* 45 Mont. 180, 122 Pac. 272.)

The issue of contributory negligence raised by the plaintiff in his own case is not disputed as to matters of fact. The evidence is so clear and convincing that reasonable men could not differ as to its effect, so that there remained nothing but a question of law (*Willams* v. *Hample,* 62 Mont. 594, 205 Pac. 829).

[72 Mont. 500.]

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by plaintiff from a judgment in favor of defendants.

The gravamen of the charge upon which this action rests is that the defendants, remiss in failing to make inspection, sold to plaintiff's intestate an automobile in which there was a hidden defect which rendered the machine dangerous to human life.

The defendant Pence Automobile Company is the distributor of Buick automobiles and parts in the northwest district, which includes Montana, while defendant Butte Buick Company is a local dealer. The car in question was shipped direct to the Butte Buick Company by the manufacturer from the factory at Flint, Michigan, upon an order which the Butte Company had given the Pence company. After the receipt of the car at Butte it was sold by the Butte company to John G. Holland, the intestate, and his brother, James J. Holland. The sale was made on June 28, 1921.

The complaint charges that before the car left the possession of the Pence Automobile Company, the toe throttle controlling the feed of gasoline to the motor had a tendency to catch, thus failing to reduce the amount of gasoline going to the motor on relieving pressure upon the throttle; that the "defect was not apparent on the face of the car to any but a skillful automobile mechanic"; that each defendant negligently failed to inspect the car for the defect before selling the same. It is alleged that while the intestate, Holland, was capable of driving the car and had skill in driving it he did not have the experience or skill necessary to detect the said defect except by actual driving and the defect was concealed from ordinary observation and the danger of the same was not appreciated by him and he believed the car ordinarily safe to drive.

The inspection given the car sold to the Hollands by the Butte Buick Company was such only as was given all new cars sold by that company, as is illustrated by the testimony of Roy Murray, president and general manager of the Butte Buick Company, speaking as a witness for plaintiff: "We inspect all new cars to see that they are operating perfectly or correctly. * * * The inspection which we give a car is an inspection to see whether or not the carburetor is adjusted properly so that the proper amount of gas and the proper mixture of gas and air goes into the engine, and, also to see that the brakes are in proper working order, and the spark control, and gasoline control, and to see that the car is properly oiled and filled with gasoline, and things of that character.'' They gave that inspection to the car in question and found it in perfect order.

In the car sold the Hollands the flow of gasoline into the carburetor is controlled by a throttle upon which pressure is exerted by one of two devices, called the hand accelerator and the foot accelerator—otherwise called the hand throttle, and the foot or toe throttle. The foot accelerator works against a spring tension. When pressure is exerted upon it the throttle valve opens and permits gasoline to enter the carburetor. When the pressure is removed the valve should close instantly thus shutting off the flow of gasoline. The hand accelerator does not open or close the valve through tension, but by rigid action. When the valve is opened or closed by the hand accelerator it stays in that position until the accelerator is shifted. The hand and foot accelerators are complementary in a measure; they connect at the carburetor; both are a means of control over the same instrumentality. But the foot accelerator does not affect the operation of the hand accelerator while the hand accelerator does affect the foot accelerator. A witness testified: "If the foot throttle will not work, the hand throttle should. If the foot throttle would not release, the hand throttle would. The hand throttle could be released without affecting the foot throttle. If the foot throttle was

caught, the hand throttle would work. The foot throttle action doesn't affect the hand throttle action, while the hand throttle action does affect the foot throttle action." To state it in another way: "The hand throttle does not move at all when you work the foot throttle, but the hand throttle moves the foot throttle up and down." If the driver accidentally or otherwise advances the hand throttle he to that extent advances the foot throttle and the foot throttle will refuse to recede until the hand throttle correspondingly recedes.

John G. Holland was an expert automobile mechanic. He had been engaged in the work of a machinist for ten years and had worked steadily as an automobile mechanic in Butte for about a year and a half and had worked on many Buick cars which came into the garage where he was employed. In order to familiarize Holland (hereafter in this opinion Holland refers to John G. Holland) with the running of a Buick car Murray used a "demonstrator" which was of the same model as the car sold, the only difference being that the demonstrator was a five-passenger while the car sold the Hollands was a seven-passenger car. Murray showed him how to shift the gears, how to use the throttle, and how to drive—"everything that was necessary to handle and control the car." The two men were riding in the demonstrator upon three occasions before the purchase of the new car was completed. On the second occasion Holland drove the demonstrator, using both the foot and the hand accelerators.

Murray testified that when the car was delivered to Holland on the 28th of June it was in good condition; "there was nothing wrong with the foot throttle at that time to my knowledge; the foot throttle did not at that time of my knowledge have any tendency to catch or stick." The car was driven by Murray around Butte "about nine miles or so," in company with Holland before it was delivered to him.

After the car was delivered and before the accident it was run over 700 miles. It was never returned to the place of business of the defendant Butte company for any repairs

prior to the time of the accident and no complaint was ever made about it to that company. On the afternoon of July 16, about a quarter of 5, Holland, in company with a fellow-workman, William Perry McAuliffe, also an expert automobile mechanic, started for a ride. Going up Arizona Street in Butte the foot accelerator or throttle caught. Holland said: "This foot throttle is stuck again, I took it up to them and they were supposed to have it fixed and bring it down Friday O. K. I am going to take it back to them again and talk to them." And then he swore. McAuliffe said: "We can fix it; let's stop and fix it." To which Holland rejoined: "No, we will make them do it. They were supposed to do it twice, and have not done it yet." To whom Holland referred the record does not indicate. So Holland and his companion proceeded in the direction of the Columbia Gardens Road to a point where they picked up a friend of Mr. Holland's, Norman O. Bongard by name. The party then returned to Butte but upon reaching Harrison Avenue took the main road to the Nine Mile House. Returning from there Holland followed what is called the upper Nine Mile Road. As he was going up an incline at a speed of about twenty-five miles per hour, the foot accelerator caught again. When the accelerator did not release, the car lunged forward at an increased speed. Here the situation was made more difficult by ruts in the road caused probably by the passage of heavy trucks. Holland stooped to release the accelerator; indeed it is probable that both Holland and McAuliffe stooped at the same time, although the record as to this is not clear. At any rate Holland lost control of the car which ran upon the bank and turned over. The three men were thrown out of the car and rendered unconscious. Holland died the next day.

Some time after the accident Murray examined the wrecked car at Murphy's garage, which was where Holland had been employed. Murray found the foot accelerator "in perfect condition; it was not damaged and was not sticking in any way."

At the conclusion of plaintiff's proof the court sustained motions for nonsuit interposed by the defendants.

The very able briefs of counsel have covered pretty thoroughly the whole field in which the liability of manufacturers and vendors for negligence in the construction or sale of their articles has been considered. But we need not enter that field at all; perhaps it were better to say we are not permitted to enter it. After a careful consideration of the evidence we are convinced that reasonable men of fair and unbiased minds can reach but one rational conclusion upon it.

Presuming that the foot accelerator, or throttle, was defective as alleged the fact remains that Holland, knowing full well the existence of the defect, continued to drive the car. It will not do to say that he did not know and appreciate the danger. The admitted facts lead irrefutably to a contrary conclusion. An inexperienced driver would know—anyone with common sense would know—that if by reason of the defect in the control of the power of the engine could not be curbed danger would result. (Assuming here that he did not know he could exercise control by the hand accelerator, or throttle.) Holland, however, was an expert automobile mechanic, skilled in the repair of Buick automobiles. The foot accelerator had caught on two former occasions to his knowledge. Upon the third occasion when he was accompanied by a friend who was also an expert automobile mechanic, the friend said to him, "We can fix it; let's stop and fix it," but Holland rejected the offer and continued upon his pleasure ride.

In the complaint, as we have seen, plaintiff averred that the [1] defect was not apparent on the face of the car to any but a skillful automobile mechanic. The proof showed Holland was an expert automobile mechanic. Further, plaintiff averred that while Holland had skill in driving the car he did not have the skill necessary to detect the defect except by actual driving; the proof showed that he had possession of the car for eighteen days during which it was run over 700 miles, and that he knew the accelerator had caught on two former

occasions; that at the beginning of the ride which was to prove fatal he was driving the car, had actual knowledge of the condition of the foot throttle, and with another skilled mechanic at hand refused to remedy the defect. Under these circumstances it must be admitted that in continuing to drive the car after he had actual knowledge of the defect Holland proceeded not with ordinary care and prudence, but carelessly, recklessly. "When the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time, in the exercise of due care, he has failed to make out a case for the jury." (*George* v. *Northern Pac. Ry. Co.*, 59 Mont. 162, 196 Pac. 869.)

It is the settled rule in this jurisdiction that whenever the plaintiff's own case presents evidence which unexplained makes out *prima facie* contributory negligence upon his part, there must be further evidence exculpating him, or he cannot recover. (*Harrington* v. *Butte, A. & Pac. Ry. Co.*, 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8; *Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131; *Meehan* v. *Great Northern Ry. Co.*, 43 Mont. 72, 114 Pac. 781; *Molt* v. *Northern Pac. Ry. Co.*, 44 Mont. 471, 120 Pac. 809; *Neilson* v. *Missoula Creamery Co.*, 59 Mont. 270, 196 Pac. 357; *Cameron* v. *Judith M. & C. Co.*, 61 Mont. 118, 201 Pac. 575; *Puckett* v. *Sherman & Reed*, 62 Mont. 395, 205 Pac. 250.) The record does not disclose explanatory evidence of the requisite character.

If upon plaintiff's proof the court had submitted the case to the jury, and the jury had found for the plaintiff, the court would have been obliged to set the verdict aside.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.