## Jackson, Appellant, *v.* Connelly.

Argued April 22, 1932. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Francis S. Laws,* of *Lewis, Adler & Laws,* for appellant.—Defendant's employees knew the horse was a dangerous animal and a kicker.

The horse kicked when struck by the ringmaster with a whip.

Plaintiff was in the customary place where persons stand when buying horses.

The relationship of defendant to plaintiff was that of invitor and invitee.

There were two features which should have been submitted to the jury: first, the place where this vicious horse was being exhibited, and, second, the actions of the defendant's employees who were in charge of and conducting the sale: Bloomer v. Snellenburg, 221 Pa. 25; Truby v. Nolan, 86 Pa. Superior Ct. 270; Haddon v. Snellenburg, 293 Pa. 333; Robb v. Niles-Bement-Pond Co., 269 Pa. 298; Markman v. Bell Stores, 285 Pa. 378.

*Thomas J. Clary,* with him *Louis Wagner* and *Richard A. Smith,* for appellee.—Plaintiff has failed to prove any negligence on part of defendant: Woodruff v. Painter, 150 Pa. 91; Robb v. Pond Co., 269 Pa. 298; Sinn v. Savings Bank, 300 Pa. 85.

The cases in Pennsylvania involving the kick of a horse are not numerous but the following citations may serve to outline the principles of law laid down by this court and the Superior Court in horse cases: Quigley v. Express Co., 27 Pa. Superior Ct. 116; Barshay v. Ice Co., 84 Pa. Superior Ct. 538; Miller v. Refining Co., 210 Pa. 628; Douglas v. Converse, 248 Pa. 232.

Plaintiff was guilty of contributory negligence: Miller v. Refining Co., 210 Pa. 628.

OPINION BY MR. JUSTICE DREW, May 9, 1932:

Plaintiff was injured by being kicked by a horse while it was being exhibited at an auction sale of horses conducted by defendant. He brought this suit for damages, and at the trial a judgment of compulsory nonsuit was entered, which the court refused to remove, after which plaintiff took this appeal, alleging that action as error.

Plaintiff is a horseman of thirty years' experience, and has been engaged for years in the business of operating a stable, teaching riding, and buying and selling horses. He has attended numerous sales of horses at auction, and on many occasions attended such sales conducted by defendant. He is very familiar with the habits of horses, and the customs incident to the exhibition and sale of horses at auction.

Defendant has for more than ten years maintained a horse bazaar in Philadelphia, where he weekly sold horses at auction, the horses being brought to the sale by owners desiring to sell them. Such a sale was held by him on April 29, 1929, during the course of which plaintiff was injured, and three horses offered by the plaintiff were sold that day, as well as horses of other owners. The method of sale was the same in each case. The horse was brought into an open space in front of the auctioneer's stand; the owner informed the ringmaster the announcement he wished the auctioneer to make to the crowd, and this being communicated to the auctioneer, public announcement was so made; the horse was then run up and down a runway, the length of the stable, so that it could be seen in action.

Shortly before the happening of this accident, a roan horse was brought out for sale, and the auctioneer was informed that it was a "man-shy horse." He announced this fact, and told the crowd to be careful. He made this announcement two or three times, and in such a way

that every one in the room could hear him. The horse had a halter on and was led by a servant of defendant. It was exhibited along the runway and brought back to the auctioneer's stand. The plaintiff was not in the room at the time the announcement concerning the character of the horse was made, being in another part of the stable, but as the horse was brought to the auctioneer's stand he came into the room and walked toward the stand, and right up to the heels of the horse. At that moment the horse was being turned, it hesitated, and to start it the ringmaster touched it with a whip. This was a customary act under such circumstances. Plaintiff at this time was within two or three feet of the heels of the horse; it kicked back and broke his left leg below the knee. Plaintiff claims touching the horse with the whip caused it to kick, and was a negligent act. The horse may have kicked for any of a number of reasons; it may have done so because of the proximity of plaintiff to its heels. There is nothing to show that it kicked because it was touched by the whip. At any rate, even if the ringmaster was negligent in this respect, which we do not decide, there can be no doubt that the plaintiff was guilty of contributory negligence.

It was unnecessary for plaintiff, even though he wished to examine the horse closely, to place himself in such a dangerous position. He could have viewed the horse from one of the grandstands provided by defendant for that purpose, where he would have been in perfect safety. The space on the ground where the horse was being shown was so large, being 84 feet long and 29 feet wide, that plaintiff could have easily inspected it, if that was his desire, from a safe distance. He testified that he did not hear the announcement made by the auctioneer, and that he did not know the horse was "man-shy." He did know that an announcement was always made by the auctioneer of the character of a horse previous to its being offered for sale. He knew that all manner of horses were sold in such places. He knew

that a horse offered for sale "on the halter," as this horse was, is sold at the purchaser's risk, no warranty being given concerning the habits or soundness of that animal. When he entered the ring, if, as he claimed, he did not hear the announcement, he could see that the horse was being sold "on the halter," and this was notice to him that it might be vicious. He was clearly negligent in approaching so close to the heels of the horse that he could be kicked by it. It was entirely unnecessary for him to do so, and, with his knowledge and experience, so to act was inexcusable. No prudent man would have done what he did.

In Miller v. Atlantic Refining Co., 210 Pa. 628, we held that a man walking deliberately past the heels of a horse and within reach of them was guilty of such negligence that he contributed to the happening of the accident. The facts here are very much less favorable to the plaintiff than they were in that case.

Douglas v. Converse, 248 Pa. 232, cited by appellant, is not in point. In that case a spectator was injured at a polo game by being struck by a horse which ran out of the playing field and among the spectators. There was no question of contributory negligence. In reversing the lower court, which entered a compulsory nonsuit, we said that the case turned on "whether or not defendant had control of his horse, and it was within his power by proper management to have avoided the accident." We held that under the facts of the case that was a question for the jury. The testimony there was sufficient to indicate that the defendant, the rider of the horse, in his "anxiety to reach the ball in advance of his opponents or from other cause amounting to wrongful act upon his part," might have been negligent. In the case at bar there was no intimation that the horse which kicked plaintiff was not under control. We think there can be no doubt that plaintiff was guilty of negligence, which contributed to his accident, because of which he cannot recover damages.

Judgment affirmed.