HUGHEY, APPELLANT, v. FERGUS COUNTY ET AL., RESPONDENTS.

(No. 7,267.)

(Submitted September 29, 1934. Decided November 13, 1934.)

[37 Pac. (2d) 1035.]

*Mr. George E. Hurd,* for Appellant, submitted an original and a reply brief, and argued the cause orally.

*Mr. E. K. Cheadle* and *Mr. C. E. Baker,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, J. Edgar Hughey, brought action against Fergus county and Claude C. White, superintendent of the county poor farm, for damages for injuries inflicted upon him by a bull owned by the county. The basis of the action is negligence in failing to keep an allegedly vicious bull confined. The defendants joined issue by separate answers; White alleged contributory negligence; the county did not. The case was tried to a jury in November, 1933. At the close of plaintiff's case, the court granted a nonsuit on the ground that contributory negligence, barring recovery, appeared from plaintiff's own testimony; judgment followed and the plaintiff has appealed from the judgment.

Plaintiff's specifications of error raise two questions: First, as to whether or not contributory negligence is a defense in such a case as this, and, second, do the facts disclosed warrant the finding of contributory negligence and justify the taking of the case from the jury, if contributory negligence is a defense to such an action?

As to the first question, there is a well-supported rule that where an animal, prohibited by statute from running at large, trespasses upon the lands of an innocent person and inflicts personal injuries upon him, the injured person may sue the owner of the animal for damages for the trespass and, incidentally, recover for the injuries inflicted as a part of the damages caused by the trespass. In such an action it is unnecessary to allege or prove that the owner had knowledge of the vicious propensities of the animal, and the owner's care or negligence is immaterial; his wrong is the trespass and he is practically made an insurer against injury by his animal. (Cooley on Torts, 3d ed., 689; 3 C. J. 94; 1 R. C. L. 1092.)

In this class of cases the gist of the action is not negligence, but the trespass, and, as contributory negligence must presup-

pose negligence, it is said that the doctrine of contributory negligence is not available as a defense. (*Mozingo* v. *Cooley*, 157 Miss. 636, 128 So. 771.) This rule is applied when the injured person is in any place where he has a right to be, and the offending animal has no right to be there. (*McClain* v. *Lewiston Interstate Fair & Racing Assn.*, 17 Idaho, 63, 104 Pac. 1015, 20 Ann. Cas. 60, 25 L. R. A. (n. s.) 691.)

Here the plaintiff was attacked on land leased by him from White, which land adjoined the county poor farm and was inclosed by a legal fence. As the bull was not of the "beef type," it was prohibited from being permitted "to run at large" (sec. 3403, Rev. Codes 1921, as amended by Laws 1925, Chap. 53); it was not so permitted but breached its inclosure; at the same time it entered that in possession of the plaintiff by jumping the division fence, which, under certain conditions, would bring the case within the rule announced. (*Scott* v. *Grover*, 56 Vt. 499, 48 Am. Rep. 814.) This rule has been criticised and it is said that the true ground of recovery in all such cases is negligence in failing to restrain, and that where cattle trespass upon lands within a legal fence because of their breachy nature, there can be no recovery unless knowledge of the character of the animals is brought home to the owner, as it is not negligent to permit cattle to run at large upon the lands of the owner. (*Clarendon Land Investment & Agency Co.* v. *McClelland*, 89 Tex. 483, 34 S. W. 98, 35 S. W. 474, 59 Am. St. Rep. 70, 31 L. R. A. 669; *Peterson* v. *Conlan*, 18 N. D. 205, 119 N. W. 367.)

But, whatever the merits of this rule, it is doubtful that such an action would lie on the facts in this case, as the testimony would indicate that the offending bull was an invitee rather than a trespasser, and the action was not brought nor tried as an action for trespass, but for the negligent failure to restrain a known vicious animal. The complaint alleges that the defendants knew that the bull was vicious and dangerous, and knew that the division fence was inadequate to restrain him, and, so knowing, did "wrongfully and negligently" suffer him to run in the pasture, and "did fail to use reasonable, ordinary

or usual care in keeping the said bull," and that on the day of the injury the bull was "negligently and carelessly permitted to come upon the lands * * * operated by the plaintiff."

Where, as here, the foundation of liability for injuries inflicted by animals, whether they are rightfully or wrongfully at the place where they are inflicted, is negligence, the ordinary doctrine of contributory negligence, as a defense, applies. (2 Cooley on Torts, 3d ed., 701; 3 C. J. 108; *Peterson* v. *Conlan*, above; *Hallyburton* v. *Burke County Fair Assn.*, 119 N. C. 526, 26 S. E. 114, 38 L. R. A. 156; *Bush* v. *Wathen*, 104 Ky. 548, 47 S. W. 599; *Palmer* v. *Hampton*, 129 Misc. 417, 220 N. Y. Supp. 768; *Patterson* v. *Rosenwald*, 222 Mo. App. 973, 6 S. W. (2d) 664; *Colby* v. *Lee*, 83 N. H. 303, 142 Atl. 115, 688.)

In line with the allegations of his complaint, the plaintiff satisfactorily established the following facts: Hughey leased the farm adjoining the poor farm in the spring of 1929, took possession and brought thereto two cows for the service of which White promised him the use of the poor farm bull. This bull was kept confined most of the time but was turned into the poor farm pasture occasionally at night for exercise. Between this pasture and that leased by Hughey the fence was constructed of woven wire to a height of thirty inches, topped by three strands of barbed wire, making it fifty-four inches high, thus more than complying with the requirements of the fence law. Notwithstanding this fact, if a cow in season appeared on the other side of the fence, the bull experienced no difficulty in jumping the fence to reach her, which propensity of the bull was known to the defendants. The bull had attacked human beings on two or three occasions prior to August 20, 1929, and the facts had been communicated to the county commissioners prior to that date. On August 20, the bull appeared in the corral at the Hughey place and there attacked and injured the plaintiff.

This evidence made out a prima facie case of negligence on the part of the defendants, and, had the plaintiff made no further showing, would have warranted recovery in either a

negligence or a trespass action. However, the plaintiff further proved that on the evening of August 19 one of his cows was in season; that White was absent from the poor farm, and he, Hughey, arranged for her service with one James Hensley, an employee at the poor farm. Hensley testified that he noticed the cow's condition and called it to Hughey's attention, and told him that "if I would happen to turn the bull out over here tonight," and "if you didn't put the cow in the pasture or something, he would be right over there," to which Hughey replied: "You turn the bull out tonight and I will put the cow in the pasture." This roundabout procedure was probably due to the fact that White had forbidden the taking of the bull from the poor farm and had insisted that the cows be brought there for service.

Hughey's version of the conversation is that when Hensley called his attention to the cow, he said, "What do you do with the bull now?" to which the latter replied, "We keep him in day times and turn him out nights," whereupon he said, "Well, I will have to bring the old cow over there to the barn in the morning."

The plaintiff testified that he knew the bull was vicious and that he was afraid of him; that he sent his children out to drive the cows in from the pasture on the evening of August 19, and as they were driving the cows he saw that the bull had come over the fence and was following the cows; that he was afraid for the safety of the children and went out and drove the bull back with rocks. The cows were put into the barn for the night. In the morning the bull was in the corral adjoining the barn. Hughey warned an old man who did the milking not to go through the corral, to go into the barn the back way; he warned him a second time and evidently told him that, when through milking, he should turn the one cow into the corral with the bull. After the cow was turned with the bull, the plaintiff attempted to drive four horses through the corral and into the barn. One old mare was afraid of the other horses and refused to go in, whereupon the plaintiff, knowing the bull was in the corral and that he was vicious, without paying any

attention to him proceeded to halter the mare. While so engaged he heard a noise behind him, and, looking over his shoulder, saw the bull coming within eight or ten feet from him; he ran for the fence, got to the top of it, when the bull lit on his back crushing the fence to the ground and inflicting the injuries of which complaint is made.

Hughey did not deny that he requested Hensley to turn the bull out on the evening of the 19th; he knew that Hensley was going to do so; he knew that, being in the adjoining pasture, if his cow was in his pasture the bull would jump the fence; he knew that the bull did so and "was in and out of there [the corral] two or three times" during the night and was in the corral in the morning. Knowing that the bull was vicious, he did not hesitate to do that which he had warned another not to do, and, having gone into the corral with the bull, he failed to take any precautions for his own safety. On this evidence the trial court found that plaintiff's own case showed contributory negligence, barring recovery, and granted the nonsuit. Did the court err in so ruling?

This court has declared that "every person is bound to an absolute duty to exercise his intelligence to discover and avoid dangers that may threaten him. When, therefore, a plaintiff asserts the right of recovery on the ground of culpable negligence of the defendant, he is bound to show that he exercised his intelligence to discover and avoid the danger, which he alleges was brought about by the negligence of the defendant" (*Sherris* v. *Northern Pac. Ry. Co.*, 55 Mont. 189, 175 Pac. 269, 271), and "when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not, at the time, in the exercise of due care, he has failed to make out a case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove this presumption, he is properly nonsuited" (*George* v. *Northern Pac. Ry. Co.*, 59 Mont. 162, 196 Pac. 869, 870). Otherwise stated, the rule is that when "plaintiff's own case presents evidence which, unexplained, makes out prima facie contributory negligence upon his part, there must be further

evidence exculpating him or he cannot recover." (*Olson* v. *City of Butte*, 86 Mont. 240, 283 Pac. 222, 224, 70 A. L. R. 1352.) "Generally, the question of contributory negligence is one of fact for the determination of the jury. It is only when but one reasonable conclusion can be reached from the facts that the court will determine the question as a matter of law." (*Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308, 310.)

Mere knowledge of the existence of the offending instrumentality at the place where the injury is suffered does not raise a legal presumption of contributory negligence, unless it further appears that the plaintiff had reason to apprehend danger. (*Neilson* v. *Missoula Creamery Co.*, 59 Mont. 270, 196 Pac. 357.) The negligence of the plaintiff which will defeat recovery must be such as directly contributes to the injury— it must be a proximate cause of the injury. (*Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226.)

In view of the nature of the evidence as outlined, it cannot be said that the plaintiff was not negligent, or that he had no reason to apprehend danger, nor yet that his negligence did not directly contribute to his injury as a proximate cause thereof. "But one reasonable conclusion can be reached from the facts," and that conclusion is that, had the plaintiff exercised that degree of care which an ordinarily prudent man, possessed of the knowledge which the plaintiff said he had, would have exercised in the circumstances, he would not have suffered the injury of which he complains. The plaintiff produced no "further evidence exculpating him," and the record contains no "further facts" and circumstances to be considered, as there were in the case of *Gohn* v. *Butte Hotel Co.*, 88 Mont. 599, 295 Pac. 262, and in the case of *Marble* v. *Ross*, 124 Mass. 44, relied upon by the plaintiff, wherein the court said that whether one going into a *pasture* in which he knew a stag, known to him to be dangerous, was kept, constituted contributory negligence, "might depend upon the size of the pasture, the position of the stag in it, and other circumstances which are proper for the consideration of the jury."

In *Earheart* v. *Youngblood,* 27 Pa. 331, a judgment for the plaintiff was reversed and a new trial granted because the question of the plaintiff's contributory negligence was not submitted to the jury. There a young man, instructed to drive cows from a corral in which a bull, known to have a vicious disposition, was confined, left the gate open and was injured by the escaping bull. In disposing of the case the court employed this significant language: "A stranger might possibly say that such a confinement, being no notice of the animal's vicious disposition, ought not to excuse an injury happening in this way, because the closing of the gate did not appear to be a precaution against danger. But one who knew the animal's vicious disposition could not thus excuse his carelessness, and it would seem that the plaintiff did know it. If the case would allow us to take this act of carelessness and this knowledge by themselves, we should incline to say that they prevent the plaintiff from recovering. But the question of negligence is complicated by other facts beside these," including proof of the "general harmlessness of the animal"; thus intimating that, were it not for conflicts in the evidence, plaintiff's contributory negligence barring recovery would appear as a matter of law.

Many of the cases cited by plaintiff hold that a recovery for injuries inflicted by vicious animals is barred only by gross negligence on the part of the injured person, but this rule is based upon the doctrine of "comparative negligence," the Illinois rule, followed in but few states and condemned as unsound elsewhere. "It is not a rule of contributory negligence at all, but a law under which men are fined for gross negligence, the fine being paid over to the plaintiff if he, on his part, has been guilty of only slight negligence." (Beach on Contributory Negligence, 85.) This rule is not applicable in this state; nor is the rule announced in *Fulton* v. *Chouteau County Farmers' Co.,* ante, p. 48, 37 Pac. (2d) 1025, that, although the plaintiff may be guilty of negligence, he may yet recover if the defendant could have avoided injuring him by the exercise of ordinary care, applicable in this case, as it does not involve a question of active negligence of the defendants at the time of the injury.

In this class of cases, the negligence of the defendant in failing to restrain an animal known to be vicious, antedates the injury, and it is the injured party who is guilty of active negligence at the time of the injury, if negligence at that time is the proximate cause of the injury. The rule here is that "if a person with full knowledge of the evil propensities of an animal wantonly excites him, or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the gravamen of the offense, produced the injury." (*Muller* v. *McKesson,* 73 N. Y. 195, 29 Am. Rep. 123.) Where the evidence shows without contradiction that the plaintiff has brought himself within this rule, contributory negligence appears "as a matter of law" and a nonsuit is proper. (*Jackson* v. *Connelly,* 309 Pa. 12, 162 Atl. 814; *Warrick* v. *Farley,* 95 Neb. 565, 145 N. W. 1020, 51 L. R. A. (n. s.) 45; see, also, *Holland* v. *Pence Automobile Co.,* 72 Mont. 500, 234 Pac. 284.)

Herein the evidence for the plaintiff is uncontradicted to the effect that he knew the bull was in his barnyard, knew he was vicious, believed it would attack a human being, and yet, voluntarily and unnecessarily placed himself in a position of danger and there stood without even keeping his eyes on the bull until it was too late to escape. On these facts the court was justified in saying that he was guilty of contributory negligence "as a matter of law."

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICE ANDERSON concur.

MR. JUSTICE ANGSTMAN not sitting.

MR. JUSTICE STEWART, being disqualified, takes no part in the foregoing decision.

Rehearing denied November 26, 1934.