McCULLOCH, Appellant, *v.* HORTON, Respondent.

(No. 7,510.)

(Submitted March 9, 1936.   Decided April 6, 1936.)

[56 Pac. (2d) 1344.]

*Mr. Guy C. Derry* and *Mr. H. L. Myers*, for Appellant, submitted an original and a reply brief; *Mr. Myers* argued the case orally.

138

140

*Mr. M. J. Lamb,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by the plaintiff while on defendant's premises, through the alleged negligent and careless operation of a truck by the defendant. The cause was tried before the court sitting with a jury, and at the close of the testimony on behalf of the plaintiff a motion for nonsuit was made by the defendant, which was granted. Thereupon a judgment of dismissal was entered. Plaintiff has appealed from this judgment. By appropriate specifications of error a review of the ruling of the trial court on this motion is sought.

Plaintiff, a man 53 years of age, was employed in the fall of 1933 as assistant tareman for the Great Western Sugar Company at Worden, Montana. He commenced work on the 2d of October of that year, and on the evening of the 14th went to the home of Charles Horton, who was his nephew and at whose home he had been taking a part of his meals while so employed, for which he paid agreed compensation. On the evening of this day his purpose in going there was to pay Mrs. Horton for his board for the week and to secure his laundry, which he had left there at noon. He remained there for the evening meal. After he had finished, he told the defendant, Horton, that he was going to his mother's to spend Saturday night and Sunday, who lived three and a half miles west and a little north of Worden. The defendant said, "Wait a minute and I will take you over." Plaintiff replied, "No, you don't need to take me over. For that matter, I could walk in a little while. There is plenty of people going over that way." Defendant said he had to go over anyway, that he had been hauling water from there, and he also had to take his brother, Paul Horton, home.

Thereupon plaintiff and defendant left the house and proceeded to the garage. The evening was dark and it was raining.

The wind was blowing "pretty hard" from the west. Defendant's garage stood north and south, with the doors in the south end. It was a small garage, and within it defendant had a truck with a body on it which was used for the hauling of beets. The clearance between the sides of the doorway and the body of the truck was a matter of approximately eight inches. On each side of the body of the truck were wings which were on hinges and capable of falling outward. When the truck was loaded with beets, these wings were held upright by means of chains. During the day Paul Horton, the brother of defendant, had been engaged in hauling beets; and, while the plaintiff was in the house listening to the radio, he saw Paul Horton shovel the dirt out of the truck and drive it into the garage. The wings mentioned were 23 or 24 inches wide; they had been placed in an upright position but not chained. The truck was comparatively new and the hinges were stiff, so that when the wings were placed in an upright position they would remain in that position without fastening the chains, unless the truck was jarred. There was no method for fastening the garage doors back, and the defendant requested the plaintiff to take hold of the west door and hold it open. The plaintiff testified: "I took hold of the door and pulled it open and held it. I stood back as far as I could back up against the brace from the post at the corner of the garage. In the position I was standing, the car could not strike me if it backed out straight." Defendant went into the garage, started the car, turned on the lights, and proceeded to back out of the garage. One witness testified as to the backing of this car. "He backed out real fast." Another testified: "The truck came out unusually fast. Defendant did not back the car out straight." Plaintiff described the movement of the truck as follows: "It seemed like he cut the truck so that the back end of it swung to the southeast throwing the front part over. In backing out, the truck caught on the side of the door frame on the southwest—on the west side of the door—the door was hung on, and split the studding. The front corner of the truck hit the door frame." The wing of the truck came down, struck the plain-

tiff, and inflicted personal injuries. The force of the blow threw the plaintiff some fifteen feet. Plaintiff's position, as testified by him, in holding the door was against a brace between two posts.

In *Mellon* v. *Kelly*, 99 Mont. 10, 41 Pac. (2d) 49, 52, we said: "This court has often announced the rule that upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff, and every fact must be deemed proved which the evidence tends to prove. (*Nangle* v. *Northern Pacific R. Co.*, 96 Mont. 512, 32 Pac. (2d) 11.) No case should ever be withdrawn from the jury when reasonable men might draw different conclusions from the evidence."

Plaintiff contends that the relation between the parties to the action at the time he sustained the injury was that of invitor and invitee; whereas the defendant contends that the relation at the time was that of licensor and licensee. If the contention of plaintiff is correct, then defendant owed the plaintiff the positive duty to exercise reasonable care for his safety. If, however, the contention of defendant is sustained, then his only duty owing to plaintiff was to refrain from wanton or wilful acts which might occasion injury. (*Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, 163 Pac. 473, Ann. Cas. 1918B, 420; *Jonosky* v. *Northern Pacific R. Co.*, 57 Mont. 63, 187 Pac. 1014; *Chichas* v. *Foley Brothers Grocery Co.*, 73 Mont. 575, 236 Pac. 361.)

As a general rule, the few decisions on the question hold that the relation between a host and a guest on private premises is not that of invitor and invitee, but is that of licensor and licensee. (*Greenfield* v. *Miller*, 173 Wis. 184, 180 N. W. 834, 12 A. L. R. 982; *Comeau* v. *Comeau*, 285 Mass. 578, 189 N. E. 588, 92 A. L. R. 1002.) The relation, however, existing between the parties to this action at the time of the occurrence of the injury was something more than that of host and guest. Plaintiff was at the time of the injury performing a service for the benefit of the defendant, and at his request. If the plaintiff did not at that particular time occupy the position

of a gratuitous employee, he at least was an invitee. Our conclusion is supported by what this court said in the case of *Liston* v. *Reynolds*, 69 Mont. 480, 223 Pac. 507.

Counsel for the defendant has cited a host of authorities which correctly announce the rule as to the duty of a licensor owing to a licensee. Without pausing to review these decisions, we may say of them, generally, that they do not relate to a state of facts where the person held to be a mere licensee was performing a service for the licensor, as in this case, and we therefore think they are of no persuasive value here.

Defendant contends that plaintiff was guilty of contributory negligence as a matter of law. It appears that plaintiff was familiar with the premises, with the particular truck, the use and operation of beet trucks, and the fact that the wings could be, and frequently were, closed without hooking the chains. It is further argued that plaintiff could have occupied a position of greater safety, although the evidence is to the effect that, if the truck had been backed out so that it did not strike the side of the garage doorway, the wing would not have fallen and plaintiff would not have been injured.

Mere knowledge of the existence of an offending instrumentality at the place where an injury is suffered does not raise a legal presumption of contributory negligence, unless it further appears that the plaintiff had reason to apprehend danger. (*Hughey* v. *Fergus County*, 98 Mont. 98, 37 Pac. (2d) 1035; *Mullins* v. *City of Butte*, 93 Mont. 601, 20 Pac. (2d) 626; *Neilson* v. *Missoula Creamery Co.*, 59 Mont. 270, 196 Pac. 357.) The failure to anticipate negligence which results in injury is not negligence and will not defeat the action for the injury sustained. (20 R. C. L. 118; *Central R. R. Co.* v. *De Busley*, (C. C. A.) 261 Fed. 561; *Wagner* v. *Philadelphia Rapid Transit Co.*, 252 Pa. 354, 97 Atl. 471; *North Bend Lumber Co.* v. *Seattle*, 116 Wash. 500, 199 Pac. 988, 19 A. L. R. 415.)

Defendant contends that the complaint was insufficient, in that it was not alleged that he had any knowledge of the alleged danger to which plaintiff claimed he was subjected. The allegation to which this contention is directed

.was that the defendant was in a position to know, and knew, or could and should have known, that the chains holding the wings were not fastened. Such an allegation is no stronger than the weakest alternative (*Pollard* v. *Oregon Short Line R. Co.*, 92 Mont. 119, 11 Pac. (2d) 271) ; and, where it is incumbent upon plaintiff to plead and prove actual notice or knowledge, such an allegation is insufficient, as illustrated by numerous decisions of this court in actions brought upon the "last clear chance" theory, collected and referred to in the *Pollard Case*, supra, and also in certain cases involving bailments. (*Dickason* v. *Dickason*, 84 Mont. 52, 274 Pac. 145.) The case here, however, does not fall into either of these classes. We think the complaint was sufficient. The proof, which was admitted over objection, and which therefore cannot aid the allegation of the complaint—it may be noted in passing—was to the effect that defendant had admitted he knew the wing was not fastened, and also that he had directed his brother, who had been using the truck, not to fasten the wings when the truck was not loaded.

It appears from the record that this cause had theretofore been tried upon a similar complaint and resulted in a judgment of nonsuit. Defendant has made a cross-assignment of error seeking a review of the ruling of the court in refusing to admit the judgment-roll in the previous action. Defendant contends that this judgment-roll, if admitted, would have sustained the affirmative plea in his answer of *res judicata*.

Section 9320, Revised Codes 1921, provides: "A final judgment dismissing the complaint, either before or after a trial, does not prevent a new action for the same cause of action, unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon its merits." The judgment-roll which was offered does not expressly declare that it was upon the merits, nor does it so appear therefrom. We have said a judgment of nonsuit is not a judgment on the merits, and nothing short of a judgment on the merits can prevent a new action. (*Arnold* v. *Genzberger*, 96 Mont. 358, 31 Pac. (2d) 296; *Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac.

336; *Glass* v. *Basin & Bay State Min. Co.,* 35 Mont. 567, 90 Pac. 753, 755.)

Counsel for the defendant relies upon the case of *Dunseth* v. ▮▮▮▮ *Butte Electric R. Co.,* 41 Mont. 14, 108 Pac. 567, 21 Ann. Cas. 1258, and we find therein some language which, perhaps, standing alone, lends color to his contention. The precise question there under consideration, however, was whether a judgment on a directed verdict is always and necessarily a judgment upon the merits. The court in deciding that question made some reference to the decisions with relation to a judgment of nonsuit. As we have so often observed, general expressions in the court's opinions are to be taken in connection with the case under consideration. (*Williams* v. *Anaconda Copper Min. Co.,* 96 Mont. 204, 29 Pac. (2d) 649.)

The trial court was not in error in excluding the judgment-roll; it was, however, in error in sustaining defendant's motion for nonsuit. Accordingly, the judgment is reversed, and the cause remanded to the district court of Yellowstone county, with direction to grant the plaintiff a new trial.

Mr. Chief Justice Sands and Associate Justices Matthews, Stewart and Morris concur.

Rehearing denied May 2, 1936.